Frost<br>*v.*<br>Spaulding.

---

## Eliakim Morse *versus* Gardner Aldrich *et al.*

One C. conveyed to the plaintiff's grantor, in fee, a parcel of land, including a portion of C.'s mill pond, with liberty of ingress and egress to and from any part of the described land and water to dig out and carry away the whole or any part of the soil. After the same granted premises had been conveyed to the plaintiff, an agreement was made between C. and the plaintiff, in which C. covenants, (without mentioning his heirs or assigns,) that he will, upon the plaintiff's request, draw off his pond six days in each year, in the months of August and September, for the purpose of giving the plaintiff an opportunity of digging and carrying out mud. C. died and his estate in the mill pond descended to the defendants. In an action by the plaintiff against the defendants, on this covenant, it was *held*, that there was a privity of estate between the parties and that the covenant ran with the land.

This was an action of covenant. The cause was tried before *Putnam* J.

In 1794, Stephen Cook, the defendants' ancestor, conveyed to William Hull, in fee, a tract of land in Watertown, containing about thirteen acres; with the privilege of using and improving the land and mill pond west of the same tract, for the purpose of fish ponds, baths, &c. within certain bounds described, including a portion of the grantor's mill pond; and the "full liberty of ingress, egress, and regress to and from any part of the said described land and water, to dig out and carry away the whole or any part of the soil, &c.; to build such causeways and dams as may be necessary to divide the same into six separate and distinct fish ponds."

Hull conveyed the same premises to the plaintiff.

Afterward, in November 1809, an agreement under seal was made by and between Cook and the plaintiff, in which, in consideration of the covenants on the part of the plaintiff, Cook

covenants with the plaintiff, his heirs and assigns, "that he will draw off his said pond when thereto requested by said Morse, in the months of August and September, not exceeding six working days in the whole, in each year, for the purpose of giving said Morse an opportunity of digging and carrying out mud, &c. as long as there may be mud in said pond, and no longer." It was upon this clause that the present action was brought. In the same agreement are other covenants, some concerning Morse's land and Cook's mill pond, and some concerning the discontinuance and costs of certain actions then pending between Cook and Morse. Cook does not covenant, in express terms, for his heirs or assigns.

It was contended by the plaintiff, that the covenant above recited was a covenant running with the land, and therefore binding upon the defendants, who derive their title to their estate as heirs of Cook, as to four fifths thereof, and as assignees by quitclaim, of one of his heirs, as to the other fifth. And this construction was supported at the trial, against the objection of the defendant    The plaintiff claimed the right to take the mud, &c. for the purpose of manuring his land.

The plaintiff requested the defendants to draw off the pond in September 1835, in order that he might get out the mud, but the defendants refused.

The plaintiff claimed a right to dig and carry out the mud in and from every part of the pond ; but the defendants contended that he was limited to the line of his own land, which runs through the pond, the plaintiff owning the land on one side and the defendants owning the land on the other side of this line. The judge ruled the point in favor of the plaintiff.

While Cook was in the occupation of the pond, the plaintiff enjoyed the privilege of taking the mud, and afterwards, whenever he requested to have the pond drawn off, until 1835. Cook died in 1833.

It was proved that the defendants made a lease of their estate, subject to the plaintiff's right to have the pond drawn off and to take the mud, according to the covenant, and that they afterwards permitted the lessee to keep up the pond, contrary to the covenant, in consideration that the lessee would permit them to have the ice which should be made on the pond

Morse
*v.*
Aldrich.

The plaintiff proved that there was a great quantity of mud n the pond ; and the jury were directed to inquire particularly whether the damage would have been more or less if the plaintiff had been restrained to dig on his own land under the pond, for the year 1835. The jury found a verdict for the plaintiff for $25, as the damages sustained in 1835 ; and they found that there was so great a quantity of mud upon his own land, that it would have made no difference that year, whether he had been restricted to his own land, or had taken mud from any other part of the pond.

The questions reserved were, 1. Whether the covenant ran with the land, and was binding upon the defendants as the heirs of the covenantor ; 2. Whether the privilege extended to the whole pond, or was restricted to the plaintiff 's own land under the pond.

*Mellen*, for the defendants. The covenant is not binding on the defendants, because Cook does not covenant for his heirs or assigns ; 2 Bl. Comm. 304 ; 2 Wms's Saund. 136, note 2 ; 1 Dyer, 14, *pl.* 69 ; 1 Dyer, 23 ; Platt on Cov. 69, 305, 448, 449 ; Bac. Abr. *Heir and Ancestor, F ; Derisley* v. *Custance*, 4 T. R. 75 ; Shep. Touch. 178 ; *Bland* v. *Inman*, W. Jones, 309 ; Vin. Abr. *Covenant, D ;* and because there is no privity of estate between the plaintiff and the defendants. In order that a covenant may run with the land, the relation of lessor and lessee, or of grantor and grantee, must subsist between the parties. *Keppell* v. *Bailey*, 2 Mylne & Keen, 538, 539 ; *Spencer's case*, 5 Coke, 16 ; Bro. Abr. *Garranties, pl.* 89. [See *Hurd* v. *Curtis, post* 459.]

*G. T. Bigelow*, for the plaintiff. This is a covenant real and runs with the land. Two things are requisite to such a covenant ; first, it must have for its object something concerning the realty ; Shep. Touch. 161, 175 ; *Mayor of Congleton* v. *Pattison*, 10 East, 135 ; and secondly, there must be a privity of estate as between the covenantor and covenantee ; *Bally* v. *Wells*, 3 Wils. 29 ; *Webb* v. *Russell*, 3 T. R. 393. This covenant concerns the realty of both. Co. Lit. 385 *a ;* Year Book, 42 *Edw.* 3. 3. 14 ; *Tatem* v. *Chaplin*, 2 H. Bl. 133 ; *Vyvyan* v. *Arthur*, 1 Barn. & Cressw. 410 ; *Jourdain* v. *Wilson*, 4 Barn. & Ald. 266 ; *Middlemore* v. *Goodale*,

Oct. 20th.

Morse
v.
Aldrich.

Cro. Car. 503 ; Platt on Cov. 469 ; *M'Crady's Ex'ors v. Brisbane*, 1 Nott & M'Cord, 104 ; *Fowle v. Bigelow*, 10 Mass. R. 379. ' And there is a privity of estate between the plaintiff and the defendants. Cook granted to Hull and his assigns an easement in Cook's soil. The easement has been assigned to the plaintiff, and the soil has descended to the defendants ; and the easement cannot be enjoyed without the covenant in question. The circumstance that the heirs of Cook are not mentioned in the covenant, is immaterial ; they are liable as holders of the estate charged with the burden. Toml. Law Dict. *Assigns* ; Platt on Cov. 65, 66 ; *Derisley v. Custance*, 4 T. R. 76 ; *Lougher v. Williams*, 2 Lev. 92 ; *Spencer's case*, 5 Co. 16 ; *Sacheverel v. Frogate*, 1 Ventr. 148, 161 ; *Kingdon v. Nottle*, 1 Maule & Selw. 357, and 4 Maule & Selw. 53 ; *Stevenson v. Lambard*, 2 East, 575 : Shep. Touch. 177 ; *Bally v. Wells*, 3 Wils. 29.

*Choate*, in reply. At the time of entering into the covenant, Cook and the plaintiff were owners of adjoining lands, with a right in Cook to flow the plaintiff's land ; but this does not constitute a privity of estate. Neither does the clause in Cook's deed to Hull and his assigns, constitute such a privity. It is merely the grant of a right to take mud, whenever the grantee can get it, in that portion of the soil covered with water which is conveyed to Hull. Supposing, however, that the right thus granted extends over the whole pond, and that so far as regards this right a privity of estate subsists between the plaintiff and the defendants, the action is not founded on the grant of this right, but on a subsequent covenant, collateral to the land, for a distinct privilege.

Wilde J. afterward drew up the opinion of the Court. The defendants are charged as the heirs of Stephen Cook, their ancestor, with the breach of a covenant made by him with the plaintiff, and the question submitted to the Court is, whether this covenant is such as is binding upon the heirs of the covenantor ? And the decision of this question depends on another, namely, whether the covenant is a real covenant, running with the land, which the defendants inherit from their ancestor, the covenantor ?

It is generally true, as has been argued by the defendants'

counsel, that, by the principles of the common law, the heir is not bound by the covenant of his ancestor, unless it be stipulated by the terms of the covenant, that it shall be performed by the heir ; and unless assets descend to him from his ancestor sufficient to answer the charge. Platt on Cov. 449 ; Dyer 14 *a*, 23 *a* ; *Barber* v. *Fox*, 2 Saund. 136. If therefore the heir be not named in the covenant, it will be binding only on the covenantor, his executors and administrators, although the heir may take by descent from the covenantor assets sufficient to answer the claim.

But this principle is not to be applied to real covenants running with the land granted or demised, and to which the covenants are attached for the purpose of securing to the one party the full benefit of the grant or demise, or to the other party the consideration on which the grant or demise was made. Such covenants are said to be inherent in the land, and will bind the heir or the assignee though not named. For as he is entitled to all the advantages arising from the grant or demise, it is but reasonable that he should sustain all such burdens as are annexed to the land. Platt on Cov. 65.

When a covenant is said to run with the land, it is obviously implied that he who holds the land, whether by descent from the covenantor, or by his express assignment, shall be bound by the covenant. The heir may be charged as an assignee, for he is an assignee in law, and so an executor may be charged as the assignee of the testator. *Derisley* v. *Custance*, 4 T. R. 75 ; Jac. Law Dict. *Assigns*. And a devisee may be charged in the like manner, and is entitled to the benefit of any covenant running with the land. *Kingdon* v. *Nottle*, 4 Maule & Selw. 53.

If then the covenant in question runs with the land, it is clear that the defendants are liable ; and it is immaterial whether the heirs and assigns of the covenantor are named in the covenant, or not, *quia transit terra cum onere*. *Bally* v. *Wells*, 3 Wils. 29.

To create a covenant which will run with the land, it is necessary that there should be a privity of estate between the covenantor and covenantee. *Spencer's case*, 5 Co. 16 ; *Cole's case*, Salk. 196 ; 3 Wils. 29 ; *Webb* v. *Russell*, 3 T. R. 402 ;

Morse
*v.*
Aldrich.

*Keppell* v. *Bailey*, 2 Mylne & Keen, 517 ; *Vyvyan* v. *Arthur*, 1 Barn. & Cressw. 410. In these cases, and in most of the cases on the same subject, the covenants were between lessors and lessees ; but the same privity exists between the grantor and grantee, where a grant is made of any subordinate interest in land ; the reversion or residue of the estate being reserved by the grantor, all covenants in support of the grant, or in relation to the beneficial enjoyment of it, are real covenants and will bind the assignee.

This principle is decisive of the present action. It appears by the deed of Stephen Cook, the defendants' ancestor, to William Hull, that the former conveyed to the latter a tract of land adjoining the mill pond in question, " with the full and free privilege of using and improving the said mill pond within certain limits, with the full liberty of ingress and egress, to dig out and carry away the whole or any part of the soil in said pond, and to divide the same pond, as described in the deed, into six separate and distinct fish ponds."

William Hull conveyed the premises to the plaintiff ; after which, disputes arose between Cook and the plaintiff relative to their respective rights, and for settling the same they entered into sundry covenants in relation to said grant, and qualifying the same ; for the breach of one of which this action was brought. At the time these covenants were made, there was a privity of estate between the parties in that part of the mill pond described in the grant to Hull. The covenant in ques- was made in reference to the plaintiff's right and interest under that grant, and was manifestly intended to confirm it, and to secure the plaintiff in the enjoyment thereof. This cove-nant therefore, upon the principles stated, is a real covenant, running with the land, and is binding on the heirs of the cove-nantor.

                           *Judgment on the verdict.*