PIERSON *v.* H. R. LEONARD FURNITURE CO.

1. LANDLORD AND TENANT—EMINENT DOMAIN—RENT.

Reduction in rent reserved under long-term lease, containing clause for proportionate reduction in case of partial condemnation, is required where 37.4 per cent. of the area of the property is taken although frontage on main thoroughfare remains the same.

2. SAME—VALUE OF LEASEHOLD INTEREST—EVIDENCE.

In suit to determine rights, if any, of lessors, lessee and latter's mortgagees in joint award under condemnation proceedings, brought pursuant to stipulation filed therein, for its subsequent apportionment by a court of chancery, testimony taken as a whole *held,* to show that the once valuable lease had become a liability rather than an asset.

3. SAME—FINANCIAL ABILITY OF LESSEE UNDER LONG-TERM LEASE.

On bill to determine rights in joint award made in condemnation proceedings taking part of valuable city property under long-term lease, financial ability of lessee furniture company to carry out obligations under lease is all important, where record shows it had vacated store prior to depression of 1929, had sublet it at a loss on various occasions and it had been vacant for a number of years, was located near many other unoccupied buildings, and annual corporation reports show lessee's financial condition is very precarious.

4. SAME—RENT—PARTIAL CONDEMNATION.

Lessee must pay full rent provided for in lease during balance of term and recoup its damages for loss of part of property through condemnation proceedings where lease contains no provision for reduction of rent in such event.

5. EQUITY—LANDLORD AND TENANT—JOINT AWARD IN CONDEMNATION PROCEEDINGS.

On bill to determine rights of lessors, lessee and latter's mortgagees in joint award under condemnation proceedings, it is not the function of court of equity to rewrite eminent domain clause in 99-year lease but to determine equitable result based on the evidence.

6. Eminent Domain—Partial Condemnation—Damages to Lessee.
   In case of partial condemnation of property held under a profitable long-term lease, a lessee might be entitled to damages in addition to a reduction of the annual rent for the remainder of the term, although the eminent domain clause in the lease provides solely for a reduction of rent.

7. Same—Landlord and Tenant—Measure of Damages.
   The measure of a lessee's damages for the condemnation of his leasehold interest is the market value of the leasehold condemned, that is, the difference between the rental value of the remainder of the term and the rent reserved in the lease or the actual value of the leasehold where there is no market value.

8. Landlord and Tenant—Division of Joint Award for Partial Condemnation.
   Division of joint award under condemnation proceedings to lessors, lessee and latter's mortgagees by court of equity so as to pay taxes due, give lessors past due rent and loss in rentals for balance of term plus present value of right of reversion after expiration of 80-year balance of term and the balance of award to lessee and its mortgagees *held*, erroneous, where lease has no market value and was badly in default, the property had been vacant for years, and the lessee had no financial responsibility so as to continue the lease for the part of the premises remaining after condemnation.

9. Equity—Landlord and Tenant—Division of Joint Award for Partial Condemnation.
   It would be inequitable to give lessee the major portion of joint award for part of premises taken under condemnation proceedings, where the lease provides that the lessee's interest in the leasehold shall be held by the lessors as security for the payment of rent to the lessors.

10. Same—Continuance of Lease by Lessee.
    In chancery suit for apportionment of joint award between lessors, lessee and latter's mortgagees in case of partial condemnation of property of very doubtful rental value, the court was in error in giving the lessee and its mortgagee the major portion of the award upon the theory that the lease was to continue for 80-year balance of term when there was every indication that lessee would not continue it after the payment of the award.

11. LANDLORD AND TENANT — CONDEMNATION AWARD — VALUE OF LEASEHOLD INTEREST.

    In suit to determine interest of lessors, lessee and latter's mortgagees in joint award of $174,747.12 in condemnation proceedings for part of valuable city property, such amount *held,* to bear no relationship to value of the leasehold, where lessee was badly in default in payment of rent and taxes and its ability to continue the lease for the remainder of the term very doubtful.

12. EQUITY — JOINT AWARD FOR PARTIAL CONDEMNATION — DETERMINATION OF INTEREST.

    No arbitrary rule may be set up which may be applied in every suit brought in chancery to determine value of interest of various parties concerned in joint award given in condemnation proceedings for part of premises subject to long-term lease.

13. LANDLORD AND TENANT — EMINENT DOMAIN.

    Subject to the exercise of the power of eminent domain, a lessee is entitled to use of entire premises leased for the entire term so long as it performs its obligations under the lease.

14. EQUITY — LESSEE'S COVENANTS AS TO REMAINDER OF PREMISES AND TERM.

    In apportioning joint award given in condemnation proceedings, court of chancery must consider and safeguard the obligation and ability of the lessee to perform the covenants of the lease for the portion of the premises not condemned during the remainder of the term.

15. SAME — DIVISION OF JOINT AWARD FOR PARTIAL CONDEMNATION.

    Division of joint award for part of premises subject to long-term lease taken under power of eminent domain is equitably made when lessee receives interest from fund, consisting of award less sum impounded for cost of rehabilitating building, present value of lessor's loss of rental, past due rent and taxes and lessors receive past due rent, and present value of their loss of rental at once and principal of above fund at termination of lease.

16. SAME.

    An apportionment of joint award between lessors and lessee in case of partial condemnation of property subject to long-term lease is equitable when the award, after deduction of all past due rent and taxes, present value of the reduction of rent

provided by the lease over the remainder of the term and the cost of rehabilitation, is invested in highest grade securities, lessee receives or is credited with the interest therefrom as long as it carries out the covenants of the lease, and the principal is paid to lessors at end of term, the award after proper deductions being thus substituted for the property taken.

17. SAME—JOINT CONDEMNATION AWARD—IMPOUNDING.
   It is unnecessary to impound or trustee balance of joint award for partial condemnation of land under long-term lease after proper deduction where fee is owned by lessors and there are no conflicting interests among them.

18. SAME—JOINT CONDEMNATION AWARD—INTEREST CREDIT TO LESSEE.
   Of joint award for taking by condemnation part of valuable city lot subject to long-term lease after deduction of present value of loss of lessors' rentals and cost of rehabilitating building, balance is turned over to lessors with exclusive title thereto and subjecting them to charge of interest payable as credit to lessee for duration of his relationship as such at rate fixed by court of equity from time to time as if fund were invested in highest grade securities.

19. APPEAL AND ERROR—REMAND—FURTHER TESTIMONY—INTEREST.
   On appeal from decree dividing joint award for taking by condemnation part of valuable city property, case is ordered remanded to take further testimony, to correct inaccuracies, determine interest rate to be credited on future rentals and for entry of decree.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 6, 1934. (Docket No. 60, Calendar No. 37,648.) Decided October 1, 1934. Rehearing denied December 11, 1934.

Bill by Caroline R. Pierson and others against H. R. Leonard Furniture Company, a Michigan corporation, City of Detroit, a municipal corporation, and Claude M. Harmon and Union Guardian Trust Company, a Michigan corporation, executors and trustees of estate of Mary S. Mandelle, deceased, for the distribution of an award under condemnation proceedings. From decree rendered, plaintiffs appeal. Modified and remanded.

*William E. Tarsney,* for plaintiffs.

*Lewis & Watkins (John R. Watkins* and *Milton F. Mallender,* of counsel), for defendant company.

*Corliss, Leete & Moody (Alexander P. Leete,* of counsel), for defendant executors and trustees.

BUTZEL, J. On May 20, 1913, George O. Robinson leased to the H. R. Leonard Furniture Company, a Michigan corporation, property at 306–308–310 Woodward avenue, Detroit, Michigan, for a term of 99 years from June 1, 1913. The property has a frontage of 54.08 feet on the east side of Woodward avenue, and a depth of approximately 100 feet. The lease provided for a graduated rental, rising from lower amounts for the first 16 years to $6,000 per year for the five-year period after April 1, 1929, then to $6,600 per year for the following five years, and to $7,200 per year for the remainder of the term. Lessee agreed to pay all taxes and assessments levied on the demised premises, as well as insurance premiums, water rates, etc. It also expressly agreed that on or before April 1, 1916, it would erect at its own expense a permanent new building, at least five stories in height, covering substantially the entire premises, and costing not less than $50,000; that it would keep the building adequately insured, and would rebuild it in the event of fire or other damage; and that the building would be surrendered to lessor without compensation and in good condition, reasonable use, wear and tear thereof excepted, upon the termination of the lease, or sooner, in the event of forfeiture, there being provisions for forfeiture and repossession in case of lessee's default in its payments, or in the performance of other covenants. The lessee was entitled to

mortgage its leasehold interest as security for any loans, but a subsequent clause distinctly provided that lessor should have a valid first lien upon the leasehold interest of the lessee and upon all buildings and improvements erected thereon for the payment of the rent, notwithstanding anything appearing thereinbefore to the contrary in the lease.

The sole reference in the lease to condemnation proceedings appears in the following clause, entitled "eminent domain:"

"If at any time during the existence of this lease the State or municipality under any legal power of eminent domain shall condemn and acquire title to any portion of the premises herein demised, then and in that case the rent herein stipulated and payable at that time shall be decreased in proportion to the amount or portion of said premises as shall be taken under such proceedings."

Lessee erected a five-story building, with basement, in accordance with the terms of the lease, and on May 16, 1914, borrowed $45,000 from Mary S. Mandelbaum (who subsequently changed her name to Mary S. Mandelle) in order to pay the cost of construction. On November 1, 1914, it secured a further loan of $20,000 from Mrs. Mandelle in order to complete and equip the building. About 14 years later it borrowed from her the additional sum of $20,000 for purposes undisclosed by the record. The three loans, aggregating $85,000, were secured by successive mortgages of the leasehold. Upon the death of Mrs. Mandelle the mortgage interest in the leasehold became vested in Claude M. Harmon and the Union Guardian Trust Company, as executors of the Mandelle estate and as trustees of certain trusts created by her will. The lessor's interest in the title to the fee of the property is now vested

in Caroline R. Pierson *et al.*, who for convenience are referred to as the lessors. Reference herein to the rights of the lessee also includes those of the trustees of the Mandelle estate.

In the proceedings to widen Woodward avenue, the city of Detroit condemned a strip of land approximately 38 feet in depth off the west side of the property. When the widening is completed, it will leave the property with a depth of approximately 62 feet, but the amount of frontage on Woodward avenue will remain unchanged. Since 37.4 per cent. of the demised premises is to be taken, there will be a corresponding reduction of the rent under the eminent domain clause of the lease.

On October 12, 1931, prior to the verdict in the widening proceedings, the lessor, lessee and the trustees of the Mandelle estate stipulated that a joint award might be entered; that a bill should subsequently be filed by the interested parties in the Wayne circuit court, in chancery, to determine the rights, if any, of the various parties in the award, and to apportion it accordingly; that from any part of the award that might be apportioned to the lessee in such proceedings there should first be paid to lessor all rents due, including the amounts due and unpaid at the time the stipulation was entered into, together with interest at the rate of five per cent. per annum from the due dates of the respective rentals to the time of payment; that no action should be taken to forfeit the lease until 30 days after the rights of the parties to the award had been determined and payment had been made by the city; that any notices of forfeiture theretofore given to the lessee by lessor should not be avoided by the stipulation, but that action thereon should be suspended until the expiration of the 30 days; that the

stipulation was not an admission by the lessor that the lessee or any person other than the lessor had any right or interest in the award.

The record presents but a meager statement of the factual background so necessary for the proper determination of the law of a case of this nature. Lessee occupied the building for several years after its erection, but vacated it about the year 1927. At one time it sublet the northerly 20 feet of the building to a restaurant; later the building was sublet "for a while" to a concern by the name of "Wextark," at a rental much less than lessee was obligated to pay the lessor. The building has been vacant for a number of years. The Leonard Furniture Company ceased to use it for a furniture store over six years ago, although the widening has not yet taken place. The record shows that the building is being carried by lessee at a large loss, that the rent due to lessors under the lease has been unpaid since April 1, 1931, and that a large sum is due for unpaid taxes. It appears from the stipulation that at least one notice of forfeiture of the lease has been given to lessee, but the record does not reveal any other facts relating thereto. Taken altogether, the testimony indicates indisputably that the lease, though at one time of great value, has become a liability rather than an asset. Whether it will ever be of any value again is largely a matter of conjecture. There is no doubt but that the widening proceedings which have been pending for so many years would discourage prospective tenants from leasing a building which is shortly to be cut down in size and which will possibly become untenantable during the process of rehabilitation. Many other buildings in the neighborhood are also unoccupied. In addition, it is undisputed that the depression has

had a most disastrous effect upon business, and that a collapse of real estate values has taken place. The record, moreover, indicates that the furniture company ceased to occupy the building even prior to the beginning of the depression in 1929.

Inasmuch as the briefs filed on behalf of plaintiffs refer to the distressed financial condition of the lessee, and this is largely borne out by the record, the question of the ability of the lessee to carry out its obligations under the lease becomes all important. For this reason the court ordered that the public records consisting of lessee's articles of association and its last annual report filed with the secretary of State be made a part of the record in this case, and that the parties be given the right to introduce further testimony if they so desired. The annual report for 1931, which was the latest one filed by lessee at the time of the argument, shows that lessee's sole asset consists of "buildings" of the value of $82,655.44; that its indebtedness amounts to $128,000; that its paid-in capital stock of $72,940 has been entirely depleted; and that, even assuming it to be the owner of the buildings it claims, the company is still $118,284.56 "in the red." Since the taking of additional testimony was closed, lessee has filed its 1932 and 1933 annual reports, and our attention has been called thereto. Even if such reports, as to which plaintiffs have not had the opportunity of cross-examination, were admissible, they merely confirm the fact that lessee's financial condition, euphemistically stated, is very precarious. The 1932 report again lists the "buildings" as the sole asset, and shows that the liabilities have grown to $147,492.40 and that the company is $137,776.96 "in the red." The 1933 report, in addition to claiming the buildings again valued

by it at $82,655.44, also includes as an asset an item of $120,433 classified as "bills receivable." This latter amount is almost identical with the sum of $120,433.13, the portion of the award decreed to lessee by the trial court without reference to lessee's obligation to expend $26,801.54 for reconstruction of the building. The liabilities, however, have grown to $169,224.11, exclusive of capital stock, so that even were lessee entitled to the assets claimed, it would still be $39,075.67 "in the red." The company evidently has ceased to carry on its business, since the reports for the three years above mentioned show that it had neither cash nor merchandise with which to do business. The building has been vacant for years, and the liability for rent and taxes continues to grow.

The conclusion is irresistible that even were lessee to receive the portion of the award decreed to it by the trial court, after the setting aside of a fund for reconstruction of the building, the deduction of amounts due plaintiffs, the payment of past-due taxes, and the application of the balance on the mortgages held by the trustees, the lessee would still find itself heavily in debt, without working capital, with its paid-in capital stock entirely depleted, and without any asset other than a leasehold of very doubtful value, which leasehold, after application of the balance of the fund upon the mortgages, would still remain heavily mortgaged to the trustees.

The jury in the condemnation proceedings rendered a joint award in favor of the lessee, lessors and the trustees, in the amount of $110,045.69 for the land taken, and $64,701.43 for damages to the building and cost of rehabilitation, or a total of $174,747.12. We shall not comment upon the size of the award. It may have reflected values prior to

the deflation accompanying the depression. There is no question but that the property was of very great value at one time.

In accordance with the stipulation, lessors filed a bill against lessee and the trustees for a determination as to the manner in which the award should be divided. The city of Detroit was also joined as defendant so that it would be bound by the decree. At the hearing before the chancellor, lessors claimed that lessee's damages should be limited to the proportionate reduction of the rent provided for by the eminent domain clause of the lease; that such reduction would fully compensate lessee for its loss; that the lease had no market value whatsoever, and, as a matter of fact, no actual value, and that the entire award, after paying for the rehabilitation of the building, should therefore belong to lessors.

On the other hand, lessee claimed that the lessors were entitled only to, (1) the amount of the present worth of their loss through the reduction of rental, plus (2) the present value of their reversionary interest in the property condemned, and that the remainder of the award should go to lessee. According to lessee's computation, the average rental for the remainder of the term, amounting to about 80 years from the time of the confirmation of the award, is $7,120 per year. Since this amount is to be reduced 37.4 per cent., lessors' loss in rentals will be $2,670.46 per year. This sum, compounded over a period of 80 years at five per cent. per annum, is represented to be $51,242.25, which according to lessee's claims constitutes the amount lessors are entitled to as the present worth of their loss through the reduction of rental. The present value of lessors' reversionary right in the property condemned is computed by lessee as follows: Lessee claims that according to mathematical tables the

use of the land, based upon a five per cent. interest rate, for a period of 80 years henceforth, is almost equal to its full value, and that the present value of the right to the reversion after 80 years is only 2.05 per cent. of the total value of the land (which is to be taken as found by the jury). Lessee therefore contends that for the loss of the land lessors are only entitled to 2.05 per cent. of $110,045.69, or to $2,255.94, which sum, if compounded at five per cent. per year, would amount, at the end of 80 years, to almost the entire amount of the award for the taking of the land. By the same process lessee finds that the present value of lessors' reversionary interest in the portion of the building taken is also only 2.05 per cent. of its total value (as found by the jury), or $815.86. Under lessee's theory these three amounts, $51,242.25 for loss of rental, $2,255.95 for loss of land, and $815.86 for loss of building, aggregating $54,313.99, constitute the total damages to which the lessors are entitled; and the lessee should receive the balance of the award, or $120,433.13, from which the cost of rehabilitation, amounting to $26,801.54, should be deducted.

The trial court adopted the lessee's theory of apportionment and entered a decree accordingly, providing first for the payment of all past-due rent and taxes, the balance to be applied on the mortgages held by the trustees of the Mandelle estate. Lessors have appealed. The decree made no provision whatsoever for rebuilding, although lessee concedes that it should bear this cost.

The first query is whether the reduction in rent, as provided for in the lease, is not the sole compensation to which lessee is entitled. The lease is silent as to any other damages. Were it not for the eminent domain clause, lessee would have been obliged to pay the full amount of the rent provided for

in the lease and to recoup its loss in the condemnation suit.  See 21 L. R. A. 212; 12 A. L. R. 830; 43 A. L. R. 1182; 53 A. L. R. 679.  It is lessors' claim that the lease becomes cancelled as to the part taken by condemnation, and that the eminent domain clause gives lessee full compensation by reduction of rent.  On the other hand, lessee claims that the lease must be construed most favorably to the lessee (see *Park Building Co.* v. *George P. Yost Fur Co.,* 208 Mich. 349; *Patterson* v. *Butterfield,* 244 Mich. 330), and that since the eminent domain clause of the lease does not expressly limit lessee's compensation to the reduction of rent, it is not precluded from recovering any other damages it may have suffered.  A more complete condemnation clause could have avoided all uncertainties.  It is not within our province to rewrite the contract.  The issues have been submitted to a court of equity, which seeks an equitable result based upon the evidence.  In the case of *In re Daly,* 29 App. Div. 286 (51 N. Y. Supp. 576), largely relied upon by lessee, there was a partial condemnation of leased property.  The State of New York provides by statutory enactment for a proportionate reduction of the rent in the case of partial condemnation of property against which there is an outstanding leasehold interest.  The court, in holding that such reduction in rent did not preclude lessee from recovering any additional damages, stated:

"The representatives of the lessor insist upon the proposition that the whole compensation is involved in the apportionment of the rent, and, upon that theory, that they are entitled to the whole award made by the commissioners in this case.  *  *  *  The tenant is considered owner of the term, and the landlord of the reversion, and the benefit and damage in respect to each interest in the premises are to

be regarded by the commissioners in making their estimate. * * * The apportionment seems to relate merely to the ascertainment of what rent shall be paid by the tenant for the untaken portion of the land, regard being had to the rental value of the part taken. * * * It seems to me that the statute intends merely to fix a ratio of rent between the property as it stood and the untaken part, * * * and that in the fixing of damages as between landlord and tenant, or as between reversioner and owner of the term, the damages sustained by the tenant, and not entering into the apportionment of rent are to be allowed upon some equitable basis. Both the landlord and the tenant may suffer by reason of the taking of the land; the former, by the destruction *pro tanto* of the term; the latter, by the extinguishment of the fee and loss of rent of the part taken.

"It is impossible to formulate any general rule to cover each case * * * but I think it is quite clear that the same rule applies with respect to damage between reversioner and the holder of a term for years, whether the land is wholly taken or whether it is only partially taken, and that just and proper compensation to a tenant cannot always be made in the apportionment of the rent under the section of the statute now under consideration. This case presents precisely that feature. The property is so situated, the lessees' relation to it is such, the uses to which it has been put are such, and the value of the term to the lessees is such, that they cannot be compensated for the taking of their interest in the land simply by an ascertainment of how much rent shall be paid in the future to the lessor for the property reserved from the improvement, and as to which covenants of the lease continue.

"It is further urged * * * that the statute terminates all the covenants of the lease in such a way as to deprive the tenants of any other benefit than that of an apportionment of the rent, and that

the terms of the statute are incorporated in the lease by operation of law precisely as if there had been an express stipulation between the parties contained in the lease. That is undoubtedly so, but the statute reads into the lease no other or further or wider term than that of the act itself, and with the same effect, which is that the covenants of the lease are terminated *pro tanto*, subject to the rights of either party as they exist at law.

"If I am right in the foregoing view of the case, it follows that the lessees were entitled to some award of substantial damages not included in the apportionment of rent."

We can readily see how, in the case of partial condemnation of property held under a profitable lease a lessee might suffer damages not compensated for by a mere reduction in rent.

Assuming that there is merit to lessee's claim, the important question still remains as to what were the additional damages actually suffered by lessee in the instant case, and what is the proper test for their determination. If the lessee has been partially released from an unprofitable lease, and the building retains the same frontage on the main thoroughfare at a lower rental, has the lessee suffered any real damages? The measure of a lessee's damages for the condemnation of his leasehold interest is said to be the market value of the leasehold condemned, that is, the difference between the rental value of the remainder of the term and the rent reserved in the lease, or the actual value of the leasehold, where there is no market value. See *In re DeLancey Street,* 120 App. Div. 700 (105 N. Y. Supp. 779); *Kafka* v. *Davidson,* 135 Minn. 389 (160 N. W. 1021); *Corrigan* v. *City of Chicago,* 144 Ill. 537 (33 N. E. 746, 21 L. R. A. 212); *Bales* v. *Railroad Co.,* 92 Kan. 771 (141 Pac. 1009, L. R. A. 1916 C,

1090) ; *Clarkson* v. *Skidmore,* 46 N. Y. 297 ; *Larkin* v. *Misland,* 100 N. Y. 212 (3 N. E. 79) ; *In re William and Anthony Streets,* 19 Wend. (N. Y.) 678 ; *Mayor and City Council of Baltimore* v. *Gamse & Bros.,* 132 Md. 290 (104 Atl. 429) ; *Mason* v. *City of Nashville,* 155 Tenn. 256 (291 S. W. 1074). In the case at bar the lease has no market value, nor is it shown that it has any actual value. Lessee, however, contends that its loss should be determined by adopting the amount of the jury's award as the value of the property taken, and that after deducting therefrom the loss of rentals capitalized in the manner hereinbefore stated, and also allowing lessors the present value of their reversionary interest in the portion of the land and buildings taken by condemnation, the balance should belong to the lessee, as the actual value of the leasehold interest condemned. In support of its claim that an almost negligible sum should be allowed lessors for the value of their reversionary interest in the land at the end of the term, lessee cites *Chicago & N. R. Co.* v. *Chicago Mechanics' Institute,* 239 Ill. 197, 219 (87 N. E. 933), an isolated case with a different factual set-up, in which the court stated that "the reversion after termination of the ground lease for 99 years may not be regarded as an element of value unless the lease expires in the very near future,—say 10 or 15 years." Such statement is not corroborated by any testimony in the instant case. Furthermore, the case cited, as well as *City of Chicago* v. *Lord,* 276 Ill. 544 (115 N. E. 8), also relied upon by lessee, does not involve the apportionment of an award between lessor and lessee by a court of equity.

In adopting lessee's theory as to the method in which the damage to its leasehold interest should be measured, the chancellor erroneously assumed that the property belonged absolutely to the lessee and

those claiming under it, subject only to some slight reversionary interest in the lessors. He totally failed to take into consideration the fact that lessee's continuing rights in what may be an unprofitable leasehold are wholly contingent upon its making large annual payments for rent, taxes and assessments, and carrying out the other covenants contained in the lease, and that the lease may be terminated almost immediately by forfeiture, should the award be paid in accordance with the decree of the lower court. Again referring to *In re Daly, supra,* so strongly relied upon by appellees, an appeal was taken in that case from an order of the commissioners allowing lessees but $9,750 out of a total award of $112,250 for the partial condemnation of a leasehold having 10 years to run. In affirming the award, the court stated:

"Upon an examination of the whole evidence, I am not satisfied that they were entitled to any more than the commissioners allowed. They are not entitled as against the lessor to everything in the way of damage they may sustain, irrespective of the detriment the lessor may suffer by the taking of the property and the destruction of the term. The entire value of the lessees' term is not to be carved out so that the whole burden will come exclusively upon the landlord. The latter it is true gets compensation for the property taken, but there may be resulting losses that are not covered by the actual market value of the land condemned. If such a rule were to be applied, it is quite evident that, upon long leases, the whole value of the fee might be absorbed for the benefit of the tenant. A fair and equitable adjustment is to be made, based upon all the facts connected with the situation of the property, its uses, and its value, and I do not perceive that the commissioners have committed any error in their adjustment of the rights of the parties in this par-

.ticular case. Here was a lease which imposed upon the lessees various duties and obligations of the payment, in addition to rent, of taxes and water rents, and they were to be at charges for repairs and interest upon investment. In the exercise of their best judgment, the commissioners found that the tenants were entitled to a certain sum as damages. With their finding I see no reason to interfere, unless the whole loss occasioned by the improvement is to be charged against the owners of the fee, which certainly cannot be the rule.''

We have been referred to many cases, almost all of which involve short-term leases. In a case of the nature of the one at bar, involving a long-term lease, the size of the award bears no relationship whatever to the value of the leasehold. An exhaustive research by counsel as well as by the court has been unsuccessful in the attempt to find an adjudicated case with a factual set-up in any way similar to the present one. We are satisfied that no arbitrary rule can be set up which may properly be applied to every case. The award of $174,747.12 in the instant case compensates for the loss of land and building and the cost of rehabilitation. Were it not for the condemnation proceedings, lessee would be entitled to the use of the entire premises for the balance of the term, as long as it performed its obligations under the lease. If, therefore, the sum required for rehabilitation be impounded and used for that purpose, and if the lessee, while not in default in meeting its obligations under the lease, receives the income from a fund consisting of the award, after the cost of rehabilitation has been set aside, and the present value of lessors' loss of rental has been deducted, the lessee will have received everything to which it is equitably entitled. If lessors now receive an amount equal to the present

value of their loss of rental, and if, in addition, at the end of the term provided in the lease, or its termination prior thereto, lessors receive the principal of the fund above described, they will receive all they are equitably entitled to, the fund so constituted being thus substituted for the property taken by condemnation.

We are much impressed with the equity of the Massachusetts statute which provides for the apportionment of a joint award in condemnation cases between tenants for life or for years and the remainderman or reversioner. 1 Mass. Gen. Laws, chap. 79, § 24, p. 750 (1921) (1 Mass. Gen. Laws, chap. 79, § 24, p. 911 [1932]), provides that:

"If a tenant for life or for years and the remainderman or reversioner sustain damages which are recoverable under this chapter, by the taking of their property by eminent domain or by injury thereto under authority of law * * * entire damages shall be assessed without apportionment thereof, and shall be paid to, or be recoverable by, any person whom the parties may appoint, and be held in trust by him for their benefit according to their respective interests. The trustees shall, from the income thereof, pay to the reversioner or remainderman the value of any annual rent or other payment which would, but for such damages, have been payable by the tenant, and the balance thereof to such tenant during the period for which his estate was limited, and upon its termination, he shall pay the principal to the reversioner or remainderman."

See, also, *Boston* v. *Robbins,* 121 Mass. 453; *Stark* v. *Mansfield,* 178 Mass. 76 (59 N. E. 643).

In *Stubbings* v. *Village of Evanston,* 136 Ill. 37 (26 N. E. 577, 11 L. R. A. 839, 29 Am. St. Rep. 300), the Illinois court declared, in providing for the impounding of an award:

"It is, however, contended, if the tenant is allowed to recover for the full value of the leasehold interest, and the landlord is compelled to rely upon the personal obligation of the tenant for the payment of rent, a rule of this character would in many cases result in great loss to the landlord. In a proceeding to condemn a part of leased premises, the rule which we have adopted fixes the relative amount of damages to be recovered by each party interested in the premises; and if a case should arise where, upon the payment of the value of the leasehold interest to the tenant, the remedy of the landlord to collect his rent might be impaired or defeated on account of the insolvency of the tenant, or other cause, a court of equity might interpose to prevent the payment of the damages recovered into the hands of the tenant, and appropriate the fund, or so much thereof as might be necessary, to the payment of the rents due or to become due from the tenant to the landlord during such time as the lease might, by its terms, continue to run."

We can readily see the advisability of impounding the award with trustees where the tenants for life or for years hold the property free from any obligation to pay rent, or where there are various conflicting interests so as to make it necessary to trustee the award for the protection of the parties. In the instant case, however, the fee is apparently owned by the lessors and there are no conflicting interests which necessitate the appointment of trustees.

We therefore decree that the following disposition be made of the award: (1) The amount required for rehabilitation of the building shall be impounded, to be used solely for that purpose. (2) There shall be paid to lessors a sum equal to the present value of their loss of rentals. We shall not

disturb the order of the trial court fixing the rate at five per cent. for the purpose of determining such present value. (3) The balance of the award shall be turned over to the lessors, who thereupon shall be charged with the payment of interest on such fund while the lease remains in full force and effect, which interest shall be credited annually on the rent lessee is obligated to pay under the lease. If at any time such interest shall exceed the rent reserved, the excess shall be paid in cash to the holders of the leasehold, who shall have a lien on the property for the payment to them of such excess, if any.

The question of the rate of interest with which lessors shall be charged becomes important. The fund thus created in a way resembles a trust fund, which for a long period would properly be invested only in securities of the very highest grade. Although in view of the present depression it might be preferable to invest such moneys in United States government securities, we shall leave the question of the rate of interest to be determined by the chancellor, who may take testimony and hear arguments in regard to such question, and who may also provide that the rate may be changed from time to time upon application of any interested party. The title to the fund so created shall be exclusive in the lessors, who shall not be obligated to place it aside as a trust fund. However, they and their assigns shall be charged with interest at the rate to be fixed by the chancellor at the same rate as if the moneys were invested in the highest grade securities. In the event of forfeiture of the lease through the default of lessee or those claiming under it, lessors' obligation to pay interest shall cease. Lessee's obligation to pay the amounts due for rent

at the time of the payment of the award, and to pay taxes and all assessments, shall not be affected by the decree. Nor shall it affect any right lessors may have to forfeit the lease in accordance with the stipulation, if lessee's defaults be not cured within 30 days after the payment of the award.

While we realize the impossibility of making an apportionment with mathematical precision, we believe that by applying the Massachusetts rule in this manner, we are doing substantial equity. If the lessee cares to continue the lease by making all the payments due thereunder at the time of the payment of the award, the annual rental payable to lessors, after the latter have credited the lessee's account with interest on the fund as above ordered, will become negligible. Lessee will, however, still be obliged to pay the large sums due each year for taxes and assessments. It is lessee's contention that the leasehold interest still has a substantial value. If this claim is well founded, lessee will be more than compensated.

The figures used in this opinion are taken from the record. Any inaccuracies shall be corrected on final decree. The cause is remanded to the trial court, with instructions to take further testimony, if necessary, to correct the figures and to determine the rate of interest and any other details, and to enter a decree in accordance with this opinion. Plaintiffs will recover costs against the lessee and trustee defendants.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.