THE STATE OF NEVADA on Relation of its Department of Highways, Appellant, *v.* RUTH GARFINKLE OLSEN and WILLIAM HADLEY, Respondents.

No. 4172

April 18, 1960                                                     351 P.2d 186

*Roger D. Foley,* Attorney General, *William E. Freedman* and *Earl Monsey,* Deputy Attorneys General, for Appellant.

*Ernest S. Brown,* of Reno, for Respondent Ruth Garfinkle Olsen.

*William L. Hammersmith,* of Reno, for Respondent William Hadley.

## OPINION

By the Court, BADT, J.:

This is an appeal from the judgment of the trial court assessing damages in favor of respondent Olsen resulting from the taking of a parcel of land owned by her, and in favor of respondent Hadley for the taking of an easement owned by him over a portion of the parcel taken from Mrs. Olsen. The easement referred to was used for access to a larger parcel which Hadley leased from Olsen. Thus the question of the value of the taken access became the question or issue of the reduction of the value of the Hadley lease.[1] Condemnation was sought of a parcel of land fronting on the south 128.35 feet on the north line of East Second Street some 300 feet west of Kietzke Lane,[2] and with a depth (subject to some variation) of 150 feet. The parcel thus sought to be condemned comprised .452 of an acre, and is a portion of a larger parcel owned by Olsen, adjacent to it on the north. Condemnation was sought, in addition to the .452 of an acre owned by Olsen, of the Hadley easement above referred to. Such easement is over a parcel of land 15 feet wide, traversing part of the Olsen property from the northerly line of East Second Street, in a northerly direction, to the larger parcel leased by Olsen to Hadley, and furnishing access to such leased parcel. Such easement was granted to Hadley in connection with and by reason of the Olsen-Hadley lease. Such Hadley lease was

[1] For related cases see State v. Olsen, 75 Nev. 75, 334 P.2d 847; and State v. Second Judicial District Court, 75 Nev. 200, 337 P.2d 274.

[2] Original defendants included Leslie C. Stencil, lessee of "Ace Metal Fabricators," situate on the property, and Pete Martin, and Frank Capriotti. They are not involved in any of the issues herein considered and are not parties to this appeal.

for a 10-year period at a monthly rental of $125. At the time of the taking of possession by appellant under an order of immediate occupancy in this proceeding, the unexpired term of said lease was four years, four and one-half months. The leased property included a large building, to which was attached a smaller frame building. The intended use of the leased property was the storage and sale of gasoline and oil, and more particularly as a truck service station.

The trial court found: "That the evidence presented at the trial sustains the market value of the property of Ruth Garfinkle Olsen taken is the sum of $43,384.50. That by reason of the taking of the front portion of all of the property owned by Ruth Garfinkle Olsen the court finds that the evidence sustains severance damage to the remaining parcel in the sum of $5,000." The court further found that Hadley was the owner of a subsisting lease with a remaining term of four years, four and one-half months; that he had leased the premises for the specific purpose of using the same for a truck service station; that the easement granted to him for access had been totally destroyed by the condemnation proceedings, and that the original purpose of his lease of the premises had likewise been destroyed; that the market value of his lease for the remaining term was $14,400; that he had installed wiring for the purpose of his lease in the sum of $300, and a gas pump and tanks of the value of $1,200; that his leasehold had been entirely destroyed for the purpose for which it was originally intended. The judgment awarded him damages in the sum of $15,900 in accordance with the foregoing figures.

Appellant states: "The only issue pertinent to this appeal presented at the trial was the question of damages to the respondents resulting from the taking of the parcel owned by Mrs. Olsen and the easement appurtenant to the Hadley leasehold." Respondents pinpoint the issue a little more finely as follows: "This being true, then the question of this appeal might be stated, was there substantial evidence in the record to support the judgment and damages, and was the judgment right in law?"

The following table (round figures being used) will show the difference in the values placed on the respective parcels by the parties to this appeal, and by the court.

| | Per Aplt. | Per Respts. | Per Court |
|---|---|---|---|
| Value of entire Olsen property including that taken by state and that leased to Hadley, 2⅓ A. | $89,000 | $93,000 | |
| Value of front footage taken | 154 | 250 | $250 |
| Total value of the property taken including improvements | 31,000 | 72,000 | 43,400 |
| Severance damage | nil | 10,000 | 5,000 |
| Benefit to larger parcel not taken | More than sufficient to offset damage | nil | nil |
| Damage to Hadley's leasehold interest, including improvements and market value of easement taken | 9,100 | 15,900 | 15,900 |

As to the front footage valuation, Mrs. Olsen testified to a recent sale of adjoining property for $70,000. Mr. Chambers, the state's expert witness, confirmed and identified this sale as sale of a parcel immediately to the east of Mrs. Olsen's parcel, at approximately $280 a front foot, but which had a depth of over 500 feet, as against a depth varying from 150 feet to 180 feet on Mrs. Olsen's property.

The only witnesses testifying as to values of the property taken were Mrs. Olsen on her own behalf and Mr. Lawrence G. Chambers, chief appraiser for the state highway department, on behalf of appellant. Mrs. Olsen had owned this property for ten years, owned other business properties in Reno and leased the same, was

aware of market values of her own and surrounding properties and had compared recent sales of nearby lands. Mr. Chambers was a civil engineer and had made numerous investigations of values for the state highway department. Both were competent witnesses. At the trial the plaintiff questioned Mrs. Olsen's competency to testify, but she was undoubtedly a competent witness. Vol. III Wigmore on Evidence, 3rd Ed., § 714; Spring Valley Waterworks v. Drinkhouse, 92 Cal. 528, 28 P. 681.

Prior to the making of the formal findings, the court filed a written opinion in which it considered the testimony of both Mrs. Olsen, on the one hand, and Mr. Chambers on the other, the qualifications of both witnesses, and the testimony given by them, respectively, with regard to the several items of value. It would appear then that, as might well have been expected, the evidence was in conflict and that the court had given this conflict its careful consideration, had weighed the testimony and had rejected in part both the higher figures to which Mrs. Olsen had testified and the lower figures to which Mr. Chambers had testified. It cannot be said that there is not substantial evidence to support these findings of value, and in the absence of reversible error on the part of the court, we shall not disturb the findings.

NRS 37.110 requires the court to ascertain and assess (1) the value of the property sought to be condemned and the improvements; (2) if the property sought to be condemned constitutes only a part of a large[r] parcel, the damages which will accrue to the portion not sought to be condemned, by reason of the severance, and the construction of the improvement in the manner proposed by the plaintiff; and (3) separately, how much the portion not sought to be condemned, and each estate or interest therein, will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; "and if the benefit shall be equal to the damages assessed, * * * the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed,

the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value of the portion taken."

(1) Appellant's first assignment of error is that the court's award was made without regard for the construction of the improvement in the manner proposed by the state and without separately ascertaining and assessing the benefits to the remaining property resulting from the improvements proposed; and that this was a direct violation of the statutory provision quoted above.

As to the court's failure to make findings relative to the benefits inuring to the remaining property, it is our construction of the findings that the court's failure or refusal to make a finding of benefits was equivalent to a finding that there were no benefits, Peterson v. Wiesner, 62 Nev. 184, 193, 146 P.2d 789. In any event, the court's failure or refusal to find benefits, followed by the conclusions and judgment in which no benefits were allowed, clearly implies a finding that there were no benefits. Dillon v. Dillon, 68 Nev. 151, 227 P.2d 783.

(2) Nor do we find support for the contention that the award of severance damages finds no support in the evidence. It will be noted from the table that Mrs. Olsen claimed a severance damage of $10,000 and that the court allowed on this item the sum of $5,000. It will be recalled that the taking of the unleased property included the taking of the easement running from East Second Street northerly across the unleased property for access to the leased parcel. It was on the basis of the taking of this easement that Mrs. Olsen testified to the severance damage of $10,000. (The question of the impact and effect upon this situation of the proposed future frontage road abutting the east boundary of the leased parcel and the access road from Second Street to the leased parcel is treated below.) She said: "It would be $10,000 at least, because between the Capriotti, Martin and Hadley lease, I lose $10,000 in the remainder of their leases, and they have informed me that it will hurt their business to a great extent and they don't care to remain. * * *

The monthly rental revenue that I obtain from all of my property is $410 a month. * * * This property is zoned for business, commercial, and it can be used for industrial or anything, and when the frontage will be taken off, I don't know what it will be zoned for. It will be on a back street. I don't know what the back streets are zoned for. And when I had given these people leases, they were for facing Second Street, and all business was done from Second Street. That changes their leases in this. And furthermore, I don't know what I could rent them for." When pressed on cross-examination to define severance damage, she answered: "By hurting the remainder of the property, and the rest of the property will lose its value, the value it has now, and the main thing is losing my income. And it was bought as one plot of land. And the access in the rear of the land, you'd almost have to have a helicopter to get in and out of it to do business. And I did not lease those people that type of land as it will remain in their leases, it was written different. It will be guesswork what the value of the remaining land will be. Nobody will know until the actual thing takes place, probably. Streets aren't developed overnight. And on the rear of the land is a water pipeline that incloses me, and it's impossible to get to the back of the land through the rear, and I don't know what the two acres could be used for. I can't predict the future. I don't know what the land could be used for or the buildings."

The upshot of the matter is that the leased property, heretofore served by access over the easement from the main used thoroughfare of East Second Street, has now become rear property. Continued access by the proposed access road running north from East Second Street and also from the proposed frontage road along the easterly line of said property would cure this difficulty if such access road and such frontage road were a part of "the construction of the improvement proposed by the plaintiff" if thus expressed in the complaint or in the maps attached to the complaint, or even, failing this, in the

stipulation of counsel that such access was a part of "the construction of the improvement proposed by the plaintiff," provided such stipulation and such provision were carried forward into the judgment. This however is not the case.[3] The taking of the unleased property, carrying with it the 15-foot easement to the leased property entailed at the best a difficult problem with reference to damages resulting to the latter. Mrs. Olsen's testimony as quoted above was competent, relevant, and material. That damage resulted to the property not taken by the state was found by the court. We cannot say that there was no basis for its finding that this damage amounted to $5,000. It was not only apprised of the situation from the testimony of the witnesses, the maps and the leases in evidence, but, accompanied by counsel, viewed the premises. This court cannot substitute its judgment for that of the trial court as to the amount of the damage.

(3) This brings us to the contention then that the state's proposed construction includes a proposed future frontage road, along the easterly boundary of the leased parcel, which will provide access thereto along such entire easterly frontage for a distance of some 325 feet, and also by way of a 40-foot bladed roadway northerly from Second Street, thence at right angles easterly to join the proposed frontage road.

The condemnation complaint recites "that a map showing by description the particular construction project involved is hereto attached marked Exhibit A and is hereby expressly referred to and made a part hereof; that a map marked Exhibit B is hereto attached and is hereby expressly referred to and made a part hereof showing in detail the project particularly described herein as the same is involved in this action." It further alleges that the project particularly described is definitely located by the department of highways over,

---

[3] Even so, respondent Hadley testified that the proposed access road from East Second Street would be entirely unacceptable, as trucks and trailers would have to make three turns along such proposed access road (available to the general public) to arrive at the property, as contrasted with the single turn into his former individually owned easement.

across, and through the described property. Nothing in the complaint and no indication in either of the maps attached to and made a part of the complaint shows a proposed construction of the "proposed future frontage road," or the proposed "access road." It was only during the course of the trial that the state's expert witness produced a transparent tracing, referred to as "an overlay," which was superimposed upon the state's exhibit picturing the property. The legal effect of this is disposed of infra.

When appellant sought to examine its expert witness as to the benefits that would accrue to the portion of the property not sought to be condemned "by the construction of the improvement proposed by the plaintiff," the court sustained respondent's objection that the statutory justification for considering such benefits meant "improvements that are to be constructed under the project for which the land is taken, and not something that may occur in the future." The court held the testimony inadmissible as being too remote. As noted, neither the frontage road nor the access road were a part of "the construction of the improvement proposed by the plaintiff" (NRS 37.110 sub. 4) either as described in the complaint or delineated on either of the maps attached to and made a part of the complaint. Appellant however relies on People v. Schultz, 123 Cal.App.2d 925, 268 P.2d 117, as approving the state's stipulation and offer by its counsel in open court that access to the property will always be provided in connection with the proposed construction and that the judgment might include such order. We need not discuss People v. Schultz at any greater length than to note that the judgment in that case actually contained a provision protecting the owner's right of access. No such provision is contained in the present judgment and respondent is not afforded the type of protection given by the judgment in the Schultz case. The judgment involved in this appeal was entered November 5, 1958, a year and five months ago, and any attempt to modify the same at this late date would encounter serious obstacles. The opinion in the Schultz case dealt at length with the question whether

the protective provision in the Schultz judgment was within the power of the court and whether the original resolutions of the highway board authorized and justified counsel's stipulation that such provision might be included. These matters are beyond our consideration here, because the protective provision was not included in the court's judgment.[4] Appellant asserts that the effect of such omission may nonetheless be cured by an inverse condemnation proceeding against the state. This however might be an expensive, uncertain, and hazardous substitute for constitutional and statutory rights vested in all persons whose property is taken by right of eminent domain.

(4) Appellant attacks the award of $15,900 for the Hadley leasehold on the ground that the court erroneously included $300 to compensate for Hadley's installation of certain wiring and $1,200 for the installation of a gas pump and tanks, and on the ground that Hadley's compensation for his leasehold interest was limited to the difference between the fair rental value for the unexpired term and the rent reserved in the lease—a maximum allowance of $9,100 in place of the $14,400 allowed.

(a) The Olsen-Hadley lease was in evidence. Under its terms the wiring (installed by Hadley to meet the standards of the city code as required by the lease) inured to the benefit of the lessor. Hadley had no right to remove the wiring. Under such situation the $300 allowed for this item was improper. In re Triborough

---

[4]In the state's argument to the trial court it referred to its transparent tracing on the "overlay map" superimposed upon the map showing the Olsen land, including the land leased to Hadley. Referring to the map with the overlay upon it, the state argued: "[This] indicates that the condemnation of the property sought by the state would without construction of the proposed improvements eliminate all access to East Second Street from the rear portion of the defendant's property. That is the map without the overlay. If we were to take this property certainly the rest of the property * * * belonging to Mrs. Olsen [presently subject to the lease to her lessees] would be cut off of access to Second Street, hence confiscated, and the damages would probably equal the total amount—the total market value of the property."

Bridge, City of New York, 293 N.Y.S. 223, 229. See also Anno. 3 A.L.R.2d 304.

(b) The allowance of the $1,200 for the gas pump and tanks occupies a different status. Hadley had the right to remove them as business fixtures, and was entitled to compensation. In re Willcox, 165 App.Div. 197, 151 N.Y.S. 141; In re Triborough Bridge, supra. See Volume I Orgel, Valuation under Eminent Domain, p. 465, § 110. He was however not entitled to allowance of their full cost, but only their depreciated value. This was not shown. When asked on cross-examination, "How much do you think they are worth?" he answered, "Well that's something that would take a little time to—normal depreciation." These improvements were installed in 1952, and the allowance of the full installation cost without deducting depreciation was error.

(c) In addition to recovery of the cost of the wiring and the gas pump and tanks, Hadley testified that his "total loss was the difference between his $125 monthly rental reserved in the lease and the $300 monthly present value." He stated definitely that this was his total loss. Such indeed is the well-recognized rule. Pierson v. H. R. Leonard Furniture Co., 268 Mich. 507, 256 N.W. 529, 98 A.L.R. 244, Vol. II Nichols on Eminent Domain, 2nd Ed., p. 42, § 5.23[3]; Vol. I Orgel, Valuation under Eminent Domain, p. 521, § 121; Anno. 3 A.L.R.2d 292. This formula justifies an allowance of $9,100 for this item and no more.

Respondent Hadley justifies the larger sum by asserting that he may be required to pay the reserved $125 monthly rental to the end of the term. The testimony of his lessor, Mrs. Olsen, quoted supra, indicates that this is not so. The court's allowance to her of $5,000 severance damage was based upon that testimony in which she stated that she would lose the rental from the Hadley and other leases, and that the tenants do not care to remain; that she had given these lessees leases facing

on Second Street; that the condemnation had in this respect changed their leases; that she had not leased to the lessees the type of land remaining after the condemnation.

Hadley's counsel, in arguing the case to the trial court, argued that, including the claimed $300 and the claimed $1,200, "the total damage which he has suffered would be in the amount of $10,600." He then argued further that *if* Hadley should be required to continue his monthly rental payments of $125 till the end of his term, this would increase his damage to $15,900.

The judgment in favor of respondent Olsen is affirmed, with her costs in this court.

The judgment in favor of respondent Hadley is modified by deducting therefrom the item of $300 and by deducting therefrom the further sum of $5,300 (the difference between $14,400 and $9,100). The case is remanded to the district court for a limited new trial to determine the depreciated value of the pump and tanks; provided, however, that if the parties within 15 days from date of receipt of a copy of this opinion, shall file a stipulation herein stipulating to the depreciated value of the said pump and tanks, then the judgment as to this item may stand as modified by substituting in place of the $1,200 allowed, the amount of such stipulated depreciated value.

No costs are allowed on the appeal from the Hadley judgment.

MCNAMEE, C. J., and PIKE, J., concur.