CYRUS T. WHEELER et al., Appellants, v. CHARLES SCHAD, Respondent.

COVENANT TO BUILD DAM AND FLUME NOT RUNNING WITH MILL-SITE. Where the owners of a mill-site and water privilege conveyed a portion thereof, and six days afterwards such owners and grantees entered into a contract to erect and keep in repair at joint expense a dam and flume for conducting water to their respective mills ; and subsequently the mill and mill-site of the grantees were sold out on judgment against them : *Held*, that the contract of the grantees to contribute to keep the dam and flume in repair was not a covenant running with the mill-site, and that the purchaser at sheriff's sale was not by his mere purchase liable for any portion of such repairs.

DISCONNECTED MATTERS DO NOT FORM ONE TRANSACTION. Where the owners of a mill-site and water privilege conveyed a portion thereof, and afterwards such owners and grantees entered into an agreement to erect and keep in repair a dam and flume for conducting water to their mills ; and it did not appear that the agreement was a part of the conveyance or contemplated at the time : *Held*, that in no sense could the two papers be considered one instrument, or connected together.

COVENANT RUNNING WITH LAND HOW CREATED. A covenant to run with land must relate to and concern the land ; and if it imposes a burden, it can only be created where there is a privity of estate between the covenantor and covenantee.

COVENANT BINDING ON ASSIGNEE. To render a covenant binding on the assignee or the covenantor, it must not only be meant to bind his estate as well as his person, but the relation between the parties must be such as to render the intention effectual ; that is, there must be privity between the covenanting parties.

COVENANT RUNNING WITH LAND ONLY MADE IN FAVOR OF ONE INTERESTED IN THE LAND. A covenant real is and can only be incident to land ; it cannot pass independent of it ; it adheres to and is maintained by it ; it is in fact a legal parasite ; hence it follows that the person in whose favor it is made must have an interest in the land charged with it.

No RECOVERY ON CONTRACT NOT COVERED BY PLEADINGS. In an action to recover half the cost of certain improvements made by plaintiff for the benefit of both parties, where the complaint based the assumpsit exclusively upon a written contract by the terms of which it was claimed defendant was bound as assignee : *Held*, that no recovery could be had upon a direct personal promise.

PROBATA NOT TO GO BEYOND ALLEGATA. Proof is only admissible to establish the case made by the allegations of the pleading.

PAROL ADOPTION OF WRITTEN CONTRACT—STATUTE OF LIMITATIONS. If a party adopt by mere parol promise the written contract of another, his obligation will be barred by the limitation prescribed for parol contracts.

APPEAL from the District Court of the Third Judicial District, Lyon County.

The facts are stated in the opinion of the court.

*Sunderland & Wood*, for Appellants.

I. Plaintiffs are entitled, under and by virtue of the agreement, to have a lien upon the defendant's interest in the dam and flume for one-half the amount expended by them in making the repairs.

II. The deed made June 5th, 1862, and the agreement made six days thereafter, are cotemporaneous papers affecting the same property, and are to be taken and construed together.

III. The agreement constituted a covenant running with the land. 1 Parsons on Contracts, 199; *Mosman* v. *Wells*, 17 Wend. 136; *Watertown* v. *Connen*, 4 Paige Chy. 510; Taylor's L. & T. Sec. 437; 2 Sugden on Vendors, Chap. 14.

IV. The claim of plaintiffs is an obligation or liability, founded upon an instrument in writing, and therefore not barred by the statute of limitations as a parol contract. The statute does not require the instrument upon which a liability is founded to be signed by the party sought to be charged. *Sherwood* v. *Dunbar*, 6 Cal. 53; *Saunickson* v. *Brown*, 5 Cal. 57; *Neighboerrs* v. *Simmons*, 2 Blackf. 75; *Raymon* v. *Simison*, 4 Blackf. 85.

V. Defendant is personally liable. This is a proceeding in equity, and if a liability exists from defendant to plaintiffs, arising out of the indebtedness alleged in their complaint, relief should be granted. When a court of equity has acquired jurisdiction, and has the whole merits before it, it will proceed and do complete justice between the parties.

*Williams & Bixler*, for Respondent.

I. This action does not lie for want of privity, either of contract or of estate, between the parties. 2 Wash. Real Prop. 15, 16;

*Hurd* v. *Curtis*, 19 Pick. 462 ; *Morse* v. *Aldrich*, 19 Pick. 454 ; *Plymouth* v. *Carver*, 16 Pick. 185 ; *Parish* v. *Whitney*, 3 Gray, 516.

II.    The covenant in this case does not run with the land or bind the assignee.    *Thompson* v. *Rose*, 8 Cow. 269 ; *Laurette* v. *Anderson*, 6 Cow. 307 ; 4 Comst. 136 ; 4 Seld. 467.

III.  The action is based solely upon the written contract, and unless it creates a lien no cause of action is found in the complaint. It does not create a lien, and none can be raised by implication. If the parties desired to create a lien, it was their duty to have expressed their intention so to do in the contract itself.    *Clarke* v. *Southwick*, 1 Curtis, 298 ; *Taylor* v. *Baldwin*, 10 Barb. 591.

IV.   If the action could be supported on equitable principles outside of the covenant, and were so treated, then it is barred by the statute of limitations because it did not accrue within two years.

V.    At the time the repairs were made, defendant was mortgagee in possession, and as such he was not liable on the covenants of the mortgagor, though running with the land.    *Johnson* v. *Sherman*, 15 Cal. 292 ; *Robinson* v. *Russell*, 24 Cal. 473.

By the Court, Lewis, C. J. :

On the fifth day of June, A. D. 1862, M. S. Hurd, Ferdinand Dunker and Peter Bossell, being the owners and in possession of a certain mill-site and water privilege, regularly conveyed to Charles Doscher, Charles Itgen, Charles D. McWilliams and William C. Duval a portion thereof, together with the water privilege connected therewith.    The grantees entered into possession and erected a quartz mill on the premises thus conveyed.    The stream was first conducted to the mill of Hurd and associates, and thence to that of their grantees.    On the eleventh day of the same month, the respective parties entered into an agreement which, after reciting the necessity of constructing a dam across the river and a flume to conduct the water to their several mills, provided that the dam and flume should be constructed at their joint expense, Hurd and his associates, however, agreeing to pay five hundred dollars more than one-half the cost, and the other parties the balance ; the dam

and flume, when completed, to be owned and enjoyed jointly in equal shares.   It was also agreed that they should be kept in good order and repair at the joint and equal expense of the respective parties.   Some time after the construction of these works, Wheeler succeeded to the interest of Bossell, and he, together with Hurd and Dunker, continued in the ownership and remained in possession of the first mill, known as the Eureka.

Doscher and his associates having mortgaged their mill some time between January and March, 1868, put the assignee of the mortgage (defendant) in possession, who continued to hold the property under the mortgage until he obtained the absolute title by virtue of foreclosure and sale under his mortgage, which occurred in October, A. D. 1868.   Early in the year 1868, while the defendant was in possession under the mortgage, the dam and flume were damaged to such an extent that it became necessary to make extensive repairs upon them.   Before proceeding with the work, the plaintiffs notified the defendant of their damaged condition, and requested him to unite with them in making the proper repairs. The defendant agreed that the work should proceed, and requested the plaintiff Wheeler to superintend it and " take charge of the workmen."   The repairs were made in due time, at an expense of three thousand five hundred dollars, one-half of which is now sought to be recovered.   Judgment for defendant; plaintiffs appeal; and it is argued on their behalf: first, that the defendant is liable on the agreement entered into between the defendant's grantors and the plaintiffs; and secondly, if not, that he is so upon his own agreement with the plaintiffs, authorizing the work to be done.

To maintain the first point, it is contended that the deed of conveyance of the mill-site to the grantors of the defendant, and the agreement referred to, should be held to be one instrument; that the stipulations of the latter should be engrafted upon the deed and held to be covenants running with the land.   But nothing is clearer than that the two instruments are utterly disconnected, as completely independent of each other as they possibly could be. The deed was executed on the fifth day of June, at which time it does not appear that there was any thought of an agreement to

construct or keep in repair any dam or flume. There is no evidence that such a project was in contemplation even by any of the parties, much less that any agreement of this character was in view. It was not, in fact, executed until six days afterwards, and there can be no presumption other than that it was not contemplated until such time. Had it entered into the transaction; had it been understood between the parties at the time of the conveyance that such contract should be executed, there might be some ground for the claim that the agreement and deed constituted but one transaction, and therefore should be construed as one instrument; but unfortunately for the appellants, there is no such showing in the case. If, in fact, the agreement did not enter into the conveyance, or was not contemplated at the time, it is of no consequence how soon afterwards it may have been executed; a day or an hour would as completely separate the instruments and make them independent of each other, as a year. It is impossible, under the evidence in this case, to merge the deed and agreement into one instrument, and construe them as if executed simultaneously.

Unless they constituted one instrument or transaction, it cannot be claimed that the covenants of the agreement run with the land so as to charge the grantee of the covenantor. To make a covenant run with the land, it is necessary, first, that it should relate to and concern the land; and secondly, a covenant imposing a burden on the land can only be created where there is privity of estate between the covenantor and covenantee. Whether a covenant for the benefit of land can be created where there is no privity is still questioned by some authorities; but it was held in *Packenham's case*, determined as early as the time of Edward III, that a stranger might covenant with the owner in such manner as to attach the benefit of a covenant to the land and have it run in favor of the assignees of the covenantee; and the rule there established has since been frequently recognized as law, although questioned by text writers, and the broad doctrine sought to be maintained that privity of estate is absolutely essential in all cases, to give one man a right of action against another upon a covenant, when there is no privity of contract.

Whether the rule announced in *Packenham's case* be law or not, is not necessary to determine here, for all the courts hold that the *burden* of a covenant can only be imposed upon land so as to run with it when there is privity of estate between the covenanter and covenantee. It was said by Lord Kenyon, in *Webb* v. *Russell*, 3 Term, 393, that " it is not sufficient that a covenant is concerning the land, but in order to make it run with the land there must be a privity of estate between the covenanting parties." That was the law long prior to the time of Kenyon, and has never been doubted, although perhaps cases may be found where an erroneous application of the rule has been made. To render a covenant binding on the assignee of the covenantor, it must therefore not only be meant to bind his estate as well as his person, but the relation between the parties must be such as to render the intention effectual—that is, there must be privity of estate between the covenanting parties. To constitute such relation, they must both have an interest in the land sought to be charged by the covenant. It is said their position must be such as would formerly have given rise to the relation of tenure. A covenant real is, and can only be, an incident to land. It cannot pass independent of it. It adheres to the land, is maintained by it, is in fact a legal parasite, created out of and deriving life from the land to which it adheres. It follows, that the person in whose favor a covenant is made must have an interest in the land charged with it; for he can only get the covenant through, and as an incident to, the land to which it is attached. Says Coke, 385, (*a*) : " A seized of the Mannor of D, whereof a Chappell was parcell, a prior with the assent of his covent covenanteth by deed indented with A and his heires to celebrate divine service in his said Chappell weekely, for the lord of the said Mannor and his servants, &c. In this case the assignees shall have an action of covenant, albeit they are not named, for that the remedie by covenant doth runne with the land, to give damages to the partie grieved, and was in a manner appurtenant to the Mannor. But if the covenant had beene with a stranger to celebrate divine service in the Chappell of A, and his heires, there the assignee shall not have an action of covenant; for the covenant cannot be annexed to the Mannor because the

covenantee was not seized of the Mannor." So it is manifest this interest in the land sought to be charged with the covenant must exist at the time the covenant is made. It needs no argument to show that an interest acquired afterwards would not avail the covenantee.

Did the plaintiffs in this case have any estate in the land owned by the defendant at the time this agreement was entered into ? It is not even claimed they had. Nor did the agreement itself create any such interest. There is no attempt in it to convey any estate to them, nor a word of grant in the whole instrument. It is a mere contract for the erection of a dam, which does not appear to be on the premises either of the plaintiffs or defendant, and a flume to conduct water to their respective mills, and to maintain them in good order. Suppose the grantors of the defendant had entered into an agreement binding themselves to build the dam and flume for the benefit of the plaintiffs, for a stipulated sum of money ; will it be claimed that such an agreement could be held a covenant running with land owned by such grantors, and which was entirely distinct from that upon which the work was to be performed ? We apprehend not. Where the distinction, as to its capacity to run with the land, between such a covenant and that entered into here, where instead of compensation in money the defendant's grantors were to receive a benefit from the improvement itself ?

As the grantors had no estate in the land owned by the defendant when the agreement was entered into, but were mere strangers to it, the case comes directly within the rule announced by Lord Coke, and very uniformly followed both by the English and American courts since his time. *Webb* v. *Russell*, 3 Term, and *Stokes* v. *Russell*, Id. ; *Hurd* v. *Curtis*, 19 Pick. 459 ; *Plymouth* v. *Carver*, 16 Pick. 183. See also an elaborate review of the question in 1 Smith's Leading Cases, note to *Spencer's Case ;* 2 Washburn on Real Property, 16 Pick. 183.

The case of *Plymouth* v. *Carver* was of this character. A town granted certain land on condition that the grantees should become bound by bond to maintain a portion of the highway passing by such land, but did not reserve a right of entry in case the

Wheeler v. Schad.

highway should be suffered to be out of repair; and the grantee gave a bond accordingly, by which he bound himself, his heirs, executors, administrators and assigns. It was held that the obligation in the bond was not a covenant running with the land; the court saying: "The plaintiffs claim to recover upon the writing declared upon as a covenant which runs with the land. But with what land is this covenant running? No right or estate in any land is conveyed by the covenantor to the inhabitants of the town. Nor did the town in their deed reserve any right of entry, or any interest whatever, in the land which they granted to Barnaby and Shurtleff. But on the contrary, the town conveyed the land on a condition that the grantees would give a bond that they would maintain the highway. The grantees gave a bond to that effect, and thereupon the estate vested in them absolutely. We think it very clear that the bond was a formal obligation of the obligors, not subjecting the land which the town had conveyed to them in any other way than any of the estate of the obligors might be liable to the performance of their personal covenants or obligations." There are cases in equity holding that covenants entered into touching or concerning land, but which are not such as will run with it, may be enforced against the assignee of the covenantor *who takes the land with notice of the covenant.* Such are the cases of *Whitman* v. *Gibson,* 9 Simon, and *Mann* v. *Stephens,* 15 Simon, 379. But in this case there is no showing that the mortgagee had notice of the covenants sought to be charged upon the land at the time the mortgage was executed, or that the defendant had such notice at the time he bought in the property at the foreclosure sale; therefore, if the cases referred to correctly declare the law, they do not control this case in the absence of the essential element of notice.

There being no privity of estate, or of contract between the parties, it only remains to determine whether the defendant is holden on his own promise made to the plaintiffs. First, the action is not based on any such promise or contract. The complaint is framed with reference exclusively to the written agreement, and upon that alone relief is sought. Nothing is charged in the complaint tending to charge the defendant with any personal obligation,

except that the repairs were made with his knowledge.   As the complaint does not allege any personal promise or contract on the part of the defendant, it would hardly be conformable to the rules of law to award relief upon the assumption of its existence.   No personal promise or agreement by the defendant could properly be proven under the complaint; for proof is only admissible to establish the case made by the allegations of the pleading.

But again, if any such promise was made, it is undoubtedly barred by the statute of limitations, not being evidenced by writing.   It cannot be said that the defendant adopted the written agreement as his own, and thereby bound himself to it, for it is not shown that he knew of its existence.   But even if he knew of it, the only evidence of his obligation upon it was in parol, and therefore it cannot with any degree of reason be said that if he had directly adopted the contract by a parol promise, his obligation would not be barred by the limitation prescribed for parol contracts.

The judgment below must be affirmed.