THE CITY OF RENO, NEVADA, Appellant, *v.*
WAYNE C. MATLEY AND ALOISE MATLEY, HIS
WIFE, ET AL., RESPONDENTS.

No. 4541

February 4, 1963

378 P.2d 256

[Rehearing denied March 1, 1963]

*Roy Lee Torvinen,* City Attorney, of Reno, for Appellant.

*Sinai and Sinai,* of Reno, for Respondents.

## OPINION

By the Court, BADT, C. J.:

Some thirteen members of the Matley family and CWF Corporation, Shoshone Coca Cola Bottling Co., and Joseph J. Morrey, as successors in interest to three respective parcels of property conveyed to them by the Matleys and abutting the easement in issue herein, sought declaratory relief and an injunction to restrain the City of Reno from constructing a road upon the easement granted to the City other than as required by an agreement entered into between the Matleys and the City. The court granted the relief asked for, and the City has appealed. Appellant's opening brief assigns the following errors:

1. That the court erred in holding that the City's covenant to construct and maintain a street on the easement granted by the Matleys was a covenant running with the land.

2. That, such being the case, it was error to hold that the successors in interest of the Matleys are real parties in interest.

3. Error in holding "that the covenant of the appellant to construct and maintain a street section eighty feet wide along the easements described in said agreement of April 24, 1956, means the construction and maintaining of a street surface 80 feet in width."

4. Error in holding "that it is the duty of the appellant under the provisions of said agreement of April 24, 1956 to remove or eliminate any barrier or hazard which would prevent the use of any portion of said eighty foot easement as a street."

5. Error in holding "that the roadbed heretofore constructed by the appellant does not discharge appellant's obligation to construct and maintain a street section 80 feet wide."

6. Error in holding "that appellant is required to eliminate the barrier created by the drainage ditches located on the eighty foot easement and to construct a level street surface to the property line on each side of the street easement."

7. Error in holding "that the appellant had not as of the date of the submission of the action to the trial court surfaced any portion of said street section eighty feet in width, and that the trial court could not determine whether the portion of said street section 80 feet in width which the defendant is required to surface is of sufficient width to accommodate the traffic using said street."

8. That it was error to grant a summary judgment where there were genuine issues of fact to be tried.

9. That it was error for the court to issue a mandatory injunction.

A pretrial conference was held and an order made pursuant to stipulation, which we have condensed as follows:

On April 24, 1956, the Matleys entered into a written contract with the City whereunder they agreed to convey to the City some 212 acres of land and "an easement for the purpose of constructing a street 80 feet in width extending to Vassar Street from Matley Lane to the terminal area of the Reno Municipal Airport, containing 1.58 acres, subject to the conditions of paragraph 2(h) of the agreement; also an easement for the purpose of constructing an access street 80 feet in width from the terminal area of the Reno Municipal Airport to Mill Street," containing 4.176 acres; also "an easement for the purpose of constructing an access street 60 feet in width from Matley Lane" to the lands described, containing 1.256 acres; also "a permanent underground easement for the purpose of constructing and maintaining a sewer line or lines" as described.

In consideration of the premises the City agreed to pay the Matleys something over $400,000, constituting

severance damages to the remaining adjacent lands of the Matleys, to construct certain fences along the easements granted, to construct and maintain a street section 100 feet wide as described (the "Plumb Lane Extension"), and further, of primary contention in this case (we borrow the phrase from appellant's brief): "to construct and maintain at its own cost and expense a street section 80 feet wide, surfaced to sufficient width in accordance with good engineering practice to accommodate traffic using said street, on the easement hereinabove described in Paragraph 1(c) hereof * * *," with an identical covenant with reference to the easement described in paragraph 1(d) of the agreement.

The City further agreed that if it failed to construct the streets thus referred to or ceased thereafter to maintain the easements for public purposes, the easements would terminate and the land revert to the Matleys and their successors in interest. The City further agreed to construct and maintain a sewer line on the underground easement granted, with certain provisions for pumping if required. Sundry other covenants were agreed upon, which, however, are not pertinent to the issues herein.

Subsequently to the execution of said agreement in 1956, plaintiffs CWF Corporation, Shoshone Coca Cola Bottling Co., and (through mesne conveyance) plaintiff Morrey acquired by purchase from the Matleys their respective parcels of land fronting on the conveyance to the City. The city engineer of Reno submitted plans and specifications for the construction of the streets, which were approved by the City, and thereafter the City entered into a contract for the construction of said streets with Isbell Construction Company, which entered upon such construction, graded the streets according to the plans and specifications, built up and compacted a roadbed for streets 40 feet in width, hauled in, dumped and leveled gravel on top of said roadbed, and has, for the purpose of draining aforesaid roadbed and in accordance with the plans and specifications, dug on each side of the roadbed on both streets a drainage ditch which has been graded and at all points dug to a depth sufficient to drain percolating and other waters away from

said roadbed. The high level of percolating and other waters make drainage of the roadbed necessary and to do so efficiently the City planned and the construction company dug the ditch along and within the limits of the 80-foot right of way. There is on each side of the roadbed a 20-foot strip from the edge of the road to the line of the right of way, the ditch being next to the right of way line with its center side sloping toward the shoulder and edge of the roadbed. The topography of plaintiff's abutting lands is uneven, though generally sloping from east to west on the north portion and from west to east on the south portion; the drainage ditch is in some instances a barrier and at almost every other point a hazard to access of the abutting lands of the plaintiffs. (At the oral argument it was conceded that in some places the ditch was six feet deep.) At almost every point along the drainage ditches ordinary access to the plaintiffs' abutting lands would require that a conduit, capable of receiving as well as carrying waters, be laid and the ditch filled. This problem will be aggravated when the road is hard-surfaced, since that will at certain points raise the level of the road as much as a foot in some areas. In some parts thereof the drainage ditch carries percolating and surface waters only. At others, pre-existing ditches which carry drainage waters during certain seasons intersect or have been rerouted along the lines of the drainage ditches constructed along the sides of the right of way; that certain lower users have vested rights in the water in said ditches if water is available to supply said rights. The lands abutting these streets and owned by the plaintiffs have been zoned as an industrial area, in which the lots are at least one acre in area. The plaintiffs CWF Corporation, Shoshone, and Morrey have constructed, or are constructing, public buildings on their parcels.

The original pretrial order contained certain contentions of fact, but was amended to eliminate the recital of such contentions.

The issues of law as recited in the pretrial order were, on the part of plaintiffs, (1) that the defendant City has a contractual as well as a legal obligation to provide

access to the lands abutting the streets; (2) that the construction of ditches by the defendant City on the easements granted to it by the plaintiffs Matley for the purpose of constructing streets is an illegal and improper use of said easements. The defendant's contention of law is that the City has no obligation to facilitate access from the streets being constructed by it to the abutting property. In its briefs appellant makes the following contentions:

It contends, first, that as the agreement was made April 24, 1956, and the deed to the City was executed in June, 1961, this prevents the covenant concerning the manner of constructing the street from being a covenant running with the land, and cites Wheeler v. Schad, 7 Nev. 204. That case is not in point. The covenant of the grantee there (the covenantor) was sought to be held binding on such *covenantor's* successor. The covenant was to pay half the costs of repairing a dam. In addition, the covenant was made six days after the deed to such covenantor, and was not contemplated by the parties when the deed was executed.[1] Besides not being in point, language used by the court is favorable to the respondents herein. Appellant has cited four other cases which are clearly distinguishable or favorable to the respondents.[2]

For over a hundred years text writers and courts have discussed the distinction between benefits and burdens arising out of the covenants, resulting generally in the liberal enforcement of the benefits of a

[1] Appellant's reliance on this holding to the effect that the agreement must be at the time of or before the deed is in direct opposition to its contention (citing II American Law of Property 371) that: "The privity of estate necessary to create a covenant running with the land may be found in the conveyance of an easement, but the covenant must be made at the time of the conveyance or subsequent to the conveyance, not before."

[2] Berryman v. Hotel Savoy Co., 160 Cal. 559, 117 P. 677, 37 L.R.A., N.S., 5; Lingle Water Users' Ass'n v. Occidental Bldg. & Ass'n, 43 Wyo. 41, 297 P. 385; Pelser v. Gingold, 214 Minn. 281, 8 N.W.2d 36; Everett Factories & Terminal Corp. v. Oldetyme D. Corp., 300 Mass. 499, 15 N.E.2d 829, 118 A.L.R. 965.

covenant as running with the land as contrasted with the enforcement of the burdens. The distinction and the difference, however, are clear. To charge the successors of the grantee with performance of the grantee's covenants (Wheeler v. Schad, supra) is an entirely different thing from permitting the successor of the grantor (the covenantee) from enforcing the benefits of the covenants. The latter is the case here. Appellant contests this conclusion and insists that the deed to the City by the Matleys was a deed poll, and created simply a personal convenant. This follows, argues appellant, because the deed was executed some years following the contract, and that under the authorities the contract became merged into the deed and that the execution and acceptance of the deed constituted the fulfillment of the contract. Appellant relies upon the general rule which is thus stated in Blake-McFall Co. v. Wilson, 98 Or. 626, 193 P. 902, 907, 14 A.L.R. 1275: "Stated broadly, the general rule is that a contract to convey land is merged in a deed executed in performance of such contract, and the deed operates as a satisfaction and discharge of the executory contract. 2 Devlin, Real Estate (3d ed.) § 850a; 27 R.C.L. 529." However, the distinction of such cases from the present case appears clearly in Mueller v. Bankers' Trust Co. of Muskegon, 262 Mich. 53, 247 N.W. 103, where the court said: "As to plaintiff's claim of merger, it may be conceded that a deed made in full execution of a contract for the sale of land is presumed to merge the provisions of a preceding contract pursuant to which it is made, including all prior negotiations and agreements leading up to execution of the deed, with the long-recognized exception that:

" 'Where, however, the deed constitutes only a part performance of the preceding contract, other distinct and unperformed provisions of the contract are not merged in it. And where a contract of sale provides for the performance of acts other than the conveyance, it remains in force as to such acts, until full performance.' 18 Corpus Juris, § 231. [page 271]" With reference to the covenant of the grantee to build a bridge affecting

the grantor's land in that case, the court said: "The covenant was collateral to the contract for the deed * * * independent of conveyance of title * * *. The deed did not extinguish the covenant to build the bridge."

The covenant involved here, to construct a street upon the conveyed easement, is a classic example of a covenant running with the land. Appellant's opening brief concedes that the construction of the streets and the installation of the sewers were of great benefit to the Matleys.

Most objections to upholding covenants as running with the land stem from the seeming incongruity that permits a man, by making a promise, to bind another who subsequently succeeds to land held by the first. Such covenants, it was thought, would seem to run against the public policy favoring the free alienability of land. This difficulty, however, would seem to be more imagined than real when we are dealing with the benefits, and not the burdens, of such covenants. In Clark, Covenants and Interests Running with Land, 2d ed. (1947), 97, Judge Clark put it this way: "* * * if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more valuable by the promise—the benefit of the covenant touches or concerns that land." This of course is the case here.

In the annotation found at 68 A.L.R.2d 1022 the annotator at page 1024 justifiably draws the following conclusions: "Once the intention of the parties is determined, little theoretical difficulty is occasioned by the running of the benefit of covenants, so as to permit their enforcement by the successors of the covenantee against the original covenantor, especially since it seems clear that the same result can ordinarily be reached by an assignment of the covenantee's rights or under the contract doctrine of third-party beneficiaries. In addition, it appears that permitting benefits to run is not likely to have any adverse effect upon the alienability of land. Accordingly, it is generally recognized that

benefits may be found to run more readily than burdens." We have no hesitation in adoping this conclusion with reference to the running of the benefit of the covenants. As the present case clearly involves the question of the running of the benefits, it would be idle speculation as to what restrictions this court might be inclined to put where the case involves the running of the burden. In Restatement, Property §§ 547 and 548, the rule is stated thus:

"§ 547. Privity between Beneficiary and Successor. The benefit of a promise respecting the use of land of the beneficiary of the promise can run with the land only to one who succeeds to some interest of the beneficiary in the land respecting the use of which the promise was made.

\* \* \* \* \*

"548. Privity between Promisor and Promisee. It is not essential to the running of the benefit of a promise respecting the use of land of the promisee or other person entitled to the benefit of the promise that there be any privity between the promisor and the promisee other than that arising out of the promise."

Appellant says that the language used in the Restatement only leaves the whole subject in a terrible mess. Certainly he is not alone in this criticism.

In Sims on Real Covenants (1901) 135, the author says: "The general notion has been long indorsed that the successors of covenantees can always have the benefit of covenants, and that they can sue in their own name at law. Exactly how this happened to be so generally agreed upon, it is hard to tell, as every other question of covenants has become so entangled. The probable explanation is that in the running of benefits the spirit of the original use of the covenant was so apparent that its doubt never seemed to appeal to the judges."

But see article of Hon. Charles E. Clark, United States Circuit Judge, 2nd Cir., in 30 Cornell Law Quarterly 378, 386 (1944–1945): "That there is so little

bona fide support for the doctrine may come as a surprise to those who have not undertaken the drudgery of examining the cases. This much must be said, that there has appeared recurrently, particularly in older texts, some doctrine known as 'privity of estate,' though it has generally remained nebulous and undefined. But when it has come into contact with the actual cases, it has yielded to the practical realities which show such covenants to be generally useful and desirable in such simple and reasonable activities as adjustment of water and irrigation, party-wall, and fencing rights, and duties of repair and the like. Hence practically all the cases uphold running; it is the rare exception which does not. The real explanation is that pseudo-history has been allowed to masquerade as real history, to only the text writers' joy and to the apparent confusion of many, but the actual confusion of few, courts. A dull and reactionary judge in England tossed off the idea of interparty privity in 1789 in a case where it was not in point, without the citation of an authority or any discussion; and the idea was picked up in the editing of an important series of cases and given some early vogue." See also 5 Powell, Real Property (1962), § 675, et seq.

Appellant's next contention is that CWF Corporation, Shoshone, and Morrey were not real parties in interest in the litigation, in other words, that they had no right to sue. This, because there was no privity between them and the City of Reno. For the most part this phase has already been discussed in connection with the running of the covenant. It remains but to be noted that the conveyance to the successors of the Matleys, by reason of its inclusion of the appurtenances, also included the right to enforce the City's covenants. State v. Department of Highways, 200 La. 409, 8 So.2d 71; Schwab v. Whitmore Rauber & Vicinus Co., 245 App.Div. 174, 281 N.Y.S. 30. It is stated in II American Law of Property, p. 372: "Where the privity rests upon the existence of an easement, it is of a continuing type so that it continues to exist between subsequent

owners of the dominant and servient lands for as long as the easement continues." Here we are not concerned with a liability of a successor of the dominant estate. The City of Reno, as the owner of the dominant estate, covenanted that it would exercise its dominant easement in a particular manner for the benefit of the servient lands, so long as the dominant owner has exercised or shall exercise its dominant easement—its covenant to maintain the street for which the easement was granted, in the manner prescribed by its covenants.

We hold that the benefit of the covenant of the City of Reno to construct and maintain the street in question runs with the land and that the successors in interest of the original covenantee have standing to enforce the covenant and are real parties in interest.

The views as above stated are reinforced by State v. Department of Highways, supra, in which it was said: "In 25 Am.Jur., § 154, p. 448, decisions by the Supreme Court of the United States and by the courts of last resort of thirty of the states are cited in support of this pronouncement: 'The right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon. Such right is appurtenant to the land, and exists when the fee title to the way is in the public as well as when it is in private ownership. It is a property right of which the owner cannot be deprived without just compensation.'" It further cited with approval Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N.E. 325, 47 A.L.R. 897, as follows: "Access to a public way is one of the incidents of ownership of land bounding thereon, and this right is appurtenant to the land and exists when the fee of the way is in the municipality as well as when it is in private ownership."

In City Motel, Inc. v. State, 75 Nev. 137, 336 P.2d 375, 337 P.2d 273, an action by the state to quiet title to certain lands formerly embraced in a right of way conveyed by ancient owners to the Virginia & Truckee Railroad Company in which the granting clauses conveyed to

the grantee and its assigns "all that certain right of way" over the lands described and "all that certain piece of land hereinafter described for the purpose of said right of way," we held with reference to the rights of the successors of the original grantors as follows: "Therefore, if there was nothing in the deeds from any of their predecessors in interest excepting the legal title to that part of the right of way abutting their land which was dominant thereto, then as present owners of the dominant fee relieved of the burden of the easement, their fee encompasses not only the fee of the particular land described in the instrument under which they base their title but also the fee to the center of the right of way bordering thereon." (336 P.2d at p. 379.) This applies, a fortiori, in the instant case where the successors to the Matleys not only received their respective deeds with the appurtenances but with right of reversion to them as such successors, on abandonment by the City of Reno of what was theretofore the dominant estate.

Appellant has much to say to the effect that the City is not required to *provide* access to the abutting property. For the sake of argument we may accept this statement,[3] but here we do not have a mere absence of providing access, but a particular kind of construction, not included in the grant, that actually prevents access. This is the situation that the court's judgment undertook to cure.

Appellant assigns error because of the mandatory features of the injunction. In support of this assignment appellant cites 28 Am.Jur., Injunctions § 17, to the effect that courts do not favor mandatory injunctions. The article referred to goes on to show, however, that early restrictions on mandatory injunctions have given way to more liberal construction of the

---

[3]But cf. State ex rel. Dept. of Highways v. Olsen, 76 Nev. 176, 351 P.2d 186, citing with approval People v. Schultz Co., 123 Cal. App.2d 925, 268 P.2d 117.

court's power, such as compelling the restoration to the moving party of that which was wrongfully taken from him or compelling the undoing of acts that had been illegally done. And in 43 C.J.S. 410, Injunctions § 5, and notes, it is said: "* * * and it is settled beyond question that equity has jurisdiction in a proper case to compel affirmative performance of an act as well as to restrain it, and that it is its duty to do so, especially where it is the only remedy which will meet the requirements of the case.

"A mandatory injunction may be granted although the act causing the injury has been completed before the suit is brought and complainant may by this means be put in statu quo, * * *." Many supporting cases from the United States Supreme Court and state jurisdictions are cited in support of this rule. The assignment is without merit.

The remainder of the specifications of error above listed as specifications Nos. 3 to 9 may be grouped. They deal with the court's construction of the agreement to build the 80-foot street, the city's duty (under such construction) to eliminate the barrier to access caused by its method of construction, the holding that the roadbed as constructed did not discharge the appellant's obligation, and the holding that a 40-foot road flanked by two 20-foot drain ditches was not a compliance with the contract.

In the oral argument it developed that these were the real matters attacked by the appeal. They may be even more closely grouped. The complaint is that the court misconstrued the contract and, growing out of such misconstruction, entered erroneous orders in its judgment.

We turn, then, to the trial court's judgment. After holding that the covenant of the City benefited the lands abutting thereon and was a covenant running with the land, and that plaintiffs CWF Corporation, Shoshone, and Morrey, as owners of the abutting land, were real parties in interest, the court turned to a

construction of the contract. It held that the City's covenant to construct and maintain a street 80 feet wide along the easements conveyed to it means the construction and maintaining a street surface 80 feet in width, extending the length of the easements; that it was the duty of the City under said agreement to remove or eliminate any barrier or hazard which would prevent the use of any portion of said 80-foot easement as a street. It adjudged that the roadbed as constructed did not discharge the City's obligation to construct and maintain a street section 80 feet wide and required the City to eliminate the barrier created by the drain ditches and to construct a level street surface to the property line on each side of the street easement.

We are in entire accord with the court's construction of the agreement and with its judgment in accordance with such construction. The easement granted was for a street and not for drain ditches.

Appellant fears that such judgment requires the entire hard surfacing of the 80-foot street from property line to property line. This is not so. As to the surfacing of a part of the street, the court retained jurisdiction and declined to make a ruling as to what portion should be surfaced in order "to accommodate traffic using said street." No part had as yet been surfaced, nor could the court determine the point at the time of entering the judgment. The type of surface was not involved in the issue submitted or determined. The sufficiency of width of the surfaced portion was not included. A definition of "good engineering practices" was not included. No evidence was taken, and none was required on any of such items, as to which the court properly retained jurisdiction for future determination. NRCP 56(d). Neither the trial court's judgment nor our affirmance thereof can be said to be a construction of these clauses of the contract.

It is further clear that the danger feared by appellant is not a real one. The City contended that the 80-foot street from property line to property line

includes not only the street for purposes of vehicular traffic but also sidewalks, a parking lane, curbs and gutters. While we may be inclined to accept this statement, this is not our problem. Our problem is rather to determine what the City may not do in compliance with its covenant. We hold that it cannot so construct the street as to prevent access to the abutting property. The construction and grading of an 80-foot street is clearly contemplated by the contract—not a 40-foot street flanked by two 20-foot ditches of such depth as to prevent access to the abutting lands of the plaintiffs. Nowhere can we reconcile the 20-foot ditches with the grant of the easement for the express purpose of constructing a public street.[4]

The subject of the right of access and remedies against interference is stated in 10 McQuillin, Municipal Corporations (3d ed. 1950), sec. 30.63(830.62) as follows:

"The most important right of the abutter incident to his ownership of property abutting on a street or alley is his right of access, i.e., his right of ingress and egress. The easement (as it is usually called) of access is not the mere right of going out from one's home or place of business upon the street and returning therefrom to his own land, but includes a certain convenience in the use of his property with respect to the rest of the world, such as the opportunity for a man's family or guests to come to his place of business without unreasonable hindrance or interruption. It includes not merely the right of the abutting owner to go into and come out of his premises but also the right to have the premises accessible to patrons, clients, and customers.

"In most jurisdictions this right of access is held to be a proprietary right, an easement in the street attached to the estate or ownership of property abutting on a street or alley, and property which cannot be appropriated to the use of the public without compensation. Therefore, a city cannot deprive property

[4]Though eliminated from this case by stipulation, the record shows that one of plaintiffs' cows drowned in one of the ditches.

holders of the right of access, nor may the right be unreasonably impaired. And this applies to the obstruction of an alley affording access to abutter's property, as well as to the main street proper. This right of access passes with a conveyance of the land. The right protected by the Constitution because it pertains to the property of the abutting owner 'is the right of access to the street or free passage between his property and the street so that he may go upon it to exercise his public right of travel and when he has done so return to his own grounds.' If the right of access is materially interfered with it is a special injury which entitles the abutter to sue for damages or to enjoin or abate the obstruction."[5] Id. pp. 669–671. To like effect is the holding of this court in Teacher Building Co. v. Las Vegas, 68 Nev. 307, 232 P.2d 119, in which this court, reversing the district court, held in favor of the plaintiff's demand for an injunction to restrain the city commissioners from vacating 30 feet of a 60-foot street, citing with approval a number of authorities supporting the right of an abutting property owner to the use of the whole street for ingress and egress, light, view, and air.

Appellant's contention that the court erroneously construed the agreement has already been dealt with. Appellant asserts that the court has made a new contract for the parties, but we do not so construe the judgment. On the other hand, appellant complains because the court did not spell out just what it meant when holding that the contract required an 80-foot street from property line to property line—how much for the street traffic, how much for the sidewalk, the parking, the curb and gutters, etc. This indeed would have been making a new contract. The court properly restricted its judgment to the issues before it, and, by reserving jurisdiction, made it possible to take care of other difficulties as they might arise.

---

[5]In addition to the authorities cited in support, reference may be made to chap. 14, secs. 14–40 of the Reno city ordinances defining a street as follows: "a public thoroughfare of width 30 feet or more which affords a primary means of access to abutting property."

Appellant maintains that material issues of fact were involved, so that summary judgment was not available. We are satisfied that the pretrial order is an answer to such contention. The only matters of fact left for determination were such as were left for further consideration, for which purpose jurisdiction was retained. NRCP 56(d).

The judgment is hereby affirmed with costs.

McNamee and Thompson, JJ., concur.