**Edith MOSELEY, Appellant
(Plaintiff Below),**

v.

**Robert BISHOP, et al, Appellees
(Defendants Below).**

**No. 4–983 A 312.**

Court of Appeals of Indiana,
Fourth District.

Nov. 20, 1984.

774

Jeffry G. Price, Donald G. Fern, Fern & Criss, Peru, for appellant.

Russell T. Keith, Keith & Keith, Albert H. Cole, Cole, Haig, Roberts & Sims, Peru, for appellees.

YOUNG, Judge.

Edith Moseley brought suit against Merrill and Joanna Gates and sixteen others (hereinafter defendants) seeking damages for the defendants' failure to maintain a tile drain that served Moseley's farm and ran across the Gateses' land. This suit was based upon a contract made in 1896 by Henry Moseley, who then owned what is now the plaintiff's farm, and William Bohn, the defendants' predecessor in interest. The trial court ruled that this contract, which required Bohn to "permanently maintain" the drain at issue, did not run with the land and thus was not binding upon the defendants, Bohn's successors. The trial court also ruled that Moseley had not proved the defendants' failure to repair the drain caused the losses of which she complained. Moseley appeals, claiming the trial court's judgment was contrary to law.

We reverse.

In 1896, Henry Moseley and William Bohn owned adjoining farms in Miami County, Indiana. Moseley's land was drained by an open ditch across Bohn's land. In August, 1896, they entered into a contract (hereinafter termed the Moseley-Bohn agreement), which read in part as follows:

That Whereas; There exists an open public ditch known as the 'Moseley Ditch' in the West half of the East half of Section 23 in Township 26 North, of Range 4 East, which real estate is owned by said Bohn, and Whereas; said Moseley is the owner of real estate lying immediately South of and adjoining said real estate and which has the ditch above

referred to for the out-let for its drainage, and Whereas said Moseley and divers other persons have heretofore been assessed for the construction and repair of said Moseley Ditch, and said Bohn is desirous of straightening and placing drain tile the entire length of said ditch; Now Therefore, in consideration that said Moseley will consent to such straightening and tiling of said ditch, and in the further consideration of the sum of Forty Dollars to be paid by said Moseley when the tiling through that portion of said ditch which has been assigned to him for repairs shall have been completed, said William C. Bohn hereby agrees that he will place through the entire length of said ditch and permanently maintain drain tile of sufficient capacity to furnish adequate out-let for drainage from a twelve inch tile at the North line of said Moseley's land, being the south line of said Section 23. Backwater at said point to be conclusive evidence of lack of said capacity. In consideration of the foregoing premises, said Moseley hereby consents to the straightening and tiling of said ditch and agrees to pay to said Bohn the sum of $40.00 on the terms above stated.

This contract was duly recorded in the Miami County Recorder's Office.

In the course of time, Henry Moseley's farm came into the hands of Edith Moseley, the plaintiff. Bohn's farm has had several subsequent owners, most recently the Gateses—who farm the land—and the other defendants, most of whom own small residential tracts. Beginning in 1976, Moseley's son Harold noticed that her farm seemed to lack good drainage. This condition worsened each year to the point that, in 1981, there was standing water on Moseley's farm. In 1981 and again in 1982 Harold walked along the course of the drain at issue, which ran exclusively across the Gateses' land. On both occasions he observed eroded holes in the ground, some filled with water, indicating that the drain tile was broken or blocked. Harold requested Mr. Gates to fulfill his obligation under the Moseley-Bohn agreement and re-·

pair the drain tile. Gates refused to do so without Moseley's help, and he petitioned the Miami County Drainage Board to repair the drain and assess the cost equally against all the affected landowners. Moseley then brought this suit against the defendants, based on the Moseley-Bohn agreement, seeking damages for losses caused by flooding on her farm and asking that the defendants be made to pay any repair charges assessed against Moseley by the drainage board. After a bench trial the court entered judgment against Moseley, and this appeal ensued.

▇▇▇ Moseley contends the trial court's ruling that the defendants had no contractual duty to repair the ditch was contrary to law. The central issue here is whether the Moseley-Bohn agreement runs with the land, so as to bind the defendants to "permanently maintain" the drain tile on their land. Generally, a covenant imposing an affirmative burden will run with the land if (1) the covenantors intend it to run, (2) the covenant touches and concerns the land, and (3) there is privity of estate between subsequent grantees of the original covenantor and covenantee. *Conduitt v. Ross,* (1885) 102 Ind. 166, 26 N.E. 198; *Brendonwood Common v. Franklin,* (1980) Ind. App., 403 N.E.2d 1136; J. CRIBBET, PRINCIPLES of the LAW of PROPERTY 353 (2d ed. 1975). Because Moseley had the burden of establishing these elements, we may reverse the trial court's ruling against her only if the evidence is undisputed and shows that she is entitled to judgment as a matter of law. *See American Shippers Supply Co. v. Campbell,* (1983) Ind.App., 456 N.E.2d 1040.

▇▇▇ The first element, the parties' intent that their covenant should run with the land, must be determined from the specific language used and from the situation of the parties when the covenant was made. *Thiebaud v. Union Furniture Co.,* (1896) 143 Ind. 340, 42 N.E. 741; *Conduitt, supra;* CRIBBET, *supra,* at 354. Although a statement in the covenant that it is binding on the covenantor's heirs and

assigns is strong evidence of intent that the covenant should run with the land, the omission of such language here, as the defendants concede, does not conclusively prove the covenant was not intended to run. *Geyer v. Lietzan*, (1952) 230 Ind. 404, 103 N.E.2d 199.

█ In the contract at issue, Bohn agreed to "permanently maintain" a tile drain across his property. This language indicates an intention to bind not only Bohn but later grantees of the burdened property as well. Also relevant are the facts surrounding the covenant. Even before the agreement, Moseley's land was drained by an open ditch across Bohn's property. Thus, the installation of buried drain tile benefitted only Bohn, whose property gained additional usable surface area. Moseley, on the other hand, incurred an increased risk that his property might not be adequately drained, since it is more difficult to remove obstructions from a buried drain than from an open ditch. Under these circumstances, the importance of Bohn's promise to "permanently maintain" the drain is clear. Given the importance of this drain to Moseley's land, it is improbable that the parties intended their agreement to be purely personal and not binding on subsequent grantees of the land. Faced with similar agreements relating to ditches and drains, courts in other jurisdictions have generally found an intent that the covenant run with the land. *See* 20 Am. Jur.2d *Covenants, Conditions, and Restrictions* § 42 (1965). We find as a matter of law that the facts surrounding the written agreement and the language used in it show an intent to create a covenant running with the land.

█ Having proved this intent, Moseley was also required to show the covenant touched and concerned the land with which it was to run. This requirement ensures that one purchasing land will be bound by his grantor's contract only where the contract has some logical connection to his use and enjoyment of the land. Thus, a successor to the covenantor's interest in property may be bound by the covenant if it is logically connected to that property interest. Conversely, a successor to the covenantee's property interest may enforce the covenant if it is logically connected to his property. *See* C. CLARK, REAL COVENANTS AND OTHER INTERESTS WHICH "RUN WITH LAND" 97 (1947). The covenant to maintain the tile drain at issue here is logically connected both to the Gateses' property—in which the drain is buried—and to the plaintiff's land, which is served by the drain. Because the drain runs exclusively across the Gateses' land, however, the agreement to maintain it has no logical connection to the land held by the other defendants, who own residential tracts in the old Bohn farm. Thus, the "touch and concern" requirement is met as to Moseley, the plaintiff, and the Gateses, but not as to the other defendants.

█ Finally, to establish a covenant running with the land, Moseley was required to prove she was in privity of estate with the defendants. Where, as here, neither of the original covenators is a party to the suit, both "vertical privity" and "horizontal privity" must be proved. "Vertical privity" is established where the party seeking to enforce the covenant and the party against whom it is to be enforced are successors in title to the property of the covenantee and covenantor respectively. *See* CRIBBET, *supra*, at 354. Vertical privity clearly exists in this case.

█ The concept of "horizontal privity," however, is more difficult. "Horizontal privity" is generally established by evidence that the original parties to the covenant had some mutual or successive interest either in the land burdened by the covenant or the land benefitted by it. The requirement of horizontal privity may be met by proof that the coventee has a leasehold and the covenantor has the reversion in the affected land. *E.g.*, *National Manufacturing & Engineering Co. v. Farmers Trust & Savings Bank*, (1933) 204 Ind. 535, 185 N.E. 146. Similarly, the parties are in privity where one has an easement in land owned by the other, so long as the covenant concerns the easement. *E.g., Con-*

*duitt v. Ross, supra; Pittsburg, Cincinnati, Chicago & St. Louis Ry. v. Wilson,* (1904) 34 Ind.App. 324 72 N.E. 666. Finally, privity of estate may be found between the original covenantors even where they did not hold simultaneous interests in the land if the covenant concerns land transferred by one party to the other. *E.g., Brendonwood Common v. Franklin, supra.* Additionally, to establish privity, the plaintiff generally must prove the covenant was made in the context of a transfer of an interest in the affected land, whether by lease or by deed conveying the property or an easement therein. *Wheeler v. Schad,* (1871) 7 Nev. 204; CRIBBET, *supra,* at 354.[1]

We believe Moseley established the required privity of estate in this case. Where one landowner agrees to construct a drain across his property for the benefit of a neighbor's land, the agreement will generally create an easement appurtenant to the adjacent land. *Steinke v. Bentley,* (1893) 6 Ind.App. 663, 34 N.E. 97; *see,*

*Hazlett v. Sinclair,* (1881) 76 Ind. 488 (agreement to maintain fence on one's land for neighbor's benefit creates easement in favor of that neighbor). Thus, we find that Bohn's agreement to construct a tile drain across his land for Moseley's benefit created an easement appurtenant to Moseley's land. Since Bohn's agreement to maintain the drain was contained in the same document, the covenant was clearly made in the context of a transfer to Moseley of an easement in Bohn's land. This satisfies the requirement of privity of estate between the original covenantors. *See Conduitt v. Ross, supra; Hazlett v. Sinclair, supra.* We accordingly hold that the Moseley-Bohn agreement runs with the land now held by Moseley and the Gateses. Because the agreement does not affect the other defendants' property, however, the trial court correctly found it did not run with their land.

In their effort to avoid this contract, the Gateses point out that the ditch

---

1. For several reasons, we make the foregoing statements of the law regarding horizontal privity with some trepidation. First, most of the legal scholars who have discussed real covenants argue that no privity of estate between the original convenators should be required for their covenant to run with the land. CLARK, *supra,* 111–37; O.W. HOLMES, THE COMMON LAW 403, 404; Newman & Losey, *Covenants Running with the Land, and Equitable Servitudes; Two Concepts, or One?* 21 HASTINGS L.J. 1319 (1970); Stoebuck, *Running Covenants: An Analytical Primer,* 52 WASH.L.REV. 861 (1977). These writers point out that the requirement of horizontal privity, while frequently stated in dictum, is seldom used to bar the running of an otherwise valid real covenant. CLARK, *supra,* at 116. They also argue that this requirement is purely arbitrary, not vindicating any interest of the landowners involved or of society at large. *Id.* at 116–17.

Second, the courts have made significant exceptions to the privity requirement. Thus, it has been held that a covenant need not be made as part of a transfer of an interest in land if "the promise is made in the adjustment of the mutual relationships arising out of the existence of an easement held by one of the parties to the promise in the land of the other." RESTATEMENT of PROPERTY § 534(b) (1944); *see Morse v. Aldrich,* (1857) 36 Mass. 449. Further, it is unnecessary to prove privity of estate where

the benefit of the covenant, rather than the burden, is to run with the land. *City of Reno v. Matley,* (1963) 79 Nev. 49, 378 P.2d 256; RESTATEMENT of PROPERTY § 548 (1944); 21 C.J.S. Covenants § 58 (1940 & Supp.1984).

Finally, the horizontal privity requirement has been undermined by the courts' frequent resort to the doctrine of equitable servitudes. Under this doctrine, a landowner who has actual or constructive notice of a covenant concerning the land made by his predecessor in interest may be bound by the covenant even though the original covenantors were not in privity of estate. *Tulk v. Moxhay,* (1848) 2 Phillips 774; CRIBBET, *supra,* at 356; *see Howard D. Johnson Co. v. Parkside Development Corp.,* (1976) 169 Ind.App. 379, 348 N.E.2d 656. Because virtually all promises giving rise to a real covenant also create an equitable servitude, this equitable doctrine has become a popular means of circumventing the technical requirements that govern real covenants—most notably the requirement of horizontal privity. *See, e.g., Neponist Property Owners' Ass'n v. Emigrant Industrial Savings Bank,* (1938) 278 N.Y. 248, 15 N.E.2d 793; *Merrionette Manor Homes Improvement Ass'n v. Heda,* (1956) 11 Ill.App.2d 186, 136 N.E.2d 556; *see generally* Stoebuck, *supra,* 52 WASH.L.REV. at 919–21. For all these reasons, although we find the technical requirement of horizontal privity has been satisfied in this case, we doubt whether this requirement has much continuing vitality in Indiana.

has been a public drain since 1883—thirteen years before the contract was made. The Gateses argue that Bohn and Moseley could not, by their private agreement, deprive the county commissioners of jurisdiction over this public drain or bind other landowners served by it. This argument is correct, as far as it goes. *See Triplett v. Carlson,* (1934) 206 Ind. 673, 191 N.E. 82 (private improvements by those served by a public drain do not deprive county commissioners of jurisdiction over it). We fail to see, however, how the agreement here interferes with the commissioners' jurisdiction or burdens other landowners served by the drain.

▮▮▮▮▮ We find no authority, and the defendants cite none, for the proposition that county drainage authorities have exclusive jurisdiction over the maintenance of public drains. As a general rule, a landowner who has granted an easement in his land may grant subsequent easements in the same land, so long as the subsequent easements do not interfere with the prior easement. *Pasadena v. California-Michigan Land & Water Co.,* (1941) 17 Cal.2d 576, 110 P.2d 983; *Deery v. Foster,* (1983) 15 Mass.App. 564, 447 N.E.2d 1251. Similarly, we believe Bohn was entitled to grant Moseley an easement across his land concurrent with the public drain and to impose upon himself contractual obligations beyond those imposed by the statutes governing public drains.

▮▮▮▮ This private easement concurrent with the public drain across Bohn's land left both the county commissioners and Bohn's successors under a duty to maintain the drain tile on Bohn's land. If the county failed to maintain it, Moseley's successors could bind Bohn's successors to do so under the agreement. If, on the other hand, the county repaired the segment of the public drain crossing Bohn's land, Moseley could require Bohn to pay any repair charges assessed against Moseley. In either event, however, the contract would be enforceable between the parties absent some showing that enforcement of the contract would conflict with the county's over-

riding interest in maintaining the public drain. Because no such conflict has arisen in this case, we do not believe the Gateses can avoid liability on the contract based on the county commissioners' concurrent jurisdiction over the drain.

▮▮▮▮ The Gateses further argue that they should not be bound by the contract at issue because its makers did not contemplate a duty to repair beyond the expiration of the original tile's normal useful life. An agreement in which the time of performance is not otherwise limited is presumed to continue for a reasonable time. *Grand Lodge Hall Ass'n v. Moore,* (1945) 224 Ind. 575, 70 N.E.2d 19, *aff'd,* (1947) 330 U.S. 808, 67 S.Ct. 1088, 91 L.Ed. 1265; *see Jay Clutter Custom Digging v. English,* (1979) 181 Ind.App. 603, 393 N.E.2d 230. Nevertheless, absent some indication that the original covenantors intended to limit its duration, a real covenant generally survives as long as the estate with which it runs. *See, Chicago, Indianapolis & Louisville Ry. v. Beisel,* (1952) 122 Ind. App. 448, 106 N.E.2d 117. In this case, Bohn agreed to "place through the entire length of said ditch and *permanently maintain* drain tile of sufficient capacity to furnish adequate out-let for drainage from a twelve inch tile...." (Emphasis added). In light of this language and the fact that continuing maintenance of the drain is vital to keep the plaintiff's land tillable, it is improbable that the original covenantors intended Bohn to maintain the drain for no longer than twenty to forty years. Rather, we conclude that the original covenantors intended the duty to repair to extend beyond the useful life of the original tile.

▮▮▮▮ The Gateses' final argument is that, even if they did breach a contractual duty to maintain the drain across their land, Moseley did not prove she was entitled to any damages as a result of that breach. In her complaint, Moseley claimed the defendants' failure to maintain the drain caused flooding in 1981 and 1982, resulting in reduced crops in those years. In its judgment, however, the trial court

found Moseley had presented insufficient evidence to prove that her crop losses stemmed from the defendants' failure to maintain the drain as specified in the agreement. As noted above, we may reverse the trial court's negative judgment against Moseley only if the undisputed evidence conclusively shows she is entitled to judgment. *American Shippers Supply Co. v. Campbell*, (1983) Ind.App., 456 N.E.2d 1040. The evidence of Moseley's losses does not meet this standard. The only evidence supporting Moseley's claim for damages was the testimony of her son—who farmed her land—that he was unable to plant crops on part of the land due to poor drainage. He testified that, if these wet areas had been dry enough to plant, they would have produced additional crops in 1981 worth $7,455 and in 1982 worth $720. Further, Moseley's son estimated the cost of reconditioning her flood-damaged soil at $1,530. There was other evidence, however, that the flooding on Moseley's farm, which caused these losses, was due to heavy rains in 1981 that flooded even well-drained property surrounding Moseley's farm. Thus, the trial court's ruling that Moseley was entitled to no damages was not contrary to law, and that part of the trial court's judgment must be affirmed.

■ Moseley's complaint also alleged, however, that the county drainage board had issued an assessment against her for a proposed reconstruction of the drain across the Gateses' land. Testimony at trial showed Moseley had not yet been required to pay the assessed amount, but might be required to pay after trial. When it entered judgment against Moseley, the trial court effectively denied this part of her claim against the defendants based on its finding that the Moseley-Bohn agreement did not run with the land. Because we find as a matter of law that the agreement ran with the Gateses' land, we conclude that the trial court erroneously precluded Moseley from holding the Gateses liable, should any assessments levied against her to repair the drain at issue.

The trial court's judgment denying Moseley damages for crop losses and rejecting her claim against the defendants other than the Gateses is affirmed; in all other respects, the trial court's judgment is reversed. Costs to the appellees.

MILLER, P.J., and CONOVER, J., concur.