**ECM, INC., Plaintiff—Appellant,**

v.

**PLACER DOME U.S., INC.; Cortez Gold Mines, Defendants— Appellees.**

No. 03–15896.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2005.

Decided Sept. 7, 2005.

Edward Pluimer, Thomas P. Swigert, Esq., William A. Dossett, Esq., Dorsey & Whitney LLP, Minneapolis, MN, for Plaintiff–Appellant.

C. David Russell, Esq., Guild, Russell, Gallagher & Fuller, Ltd., Reno, NV, Rodney Patula, Graham & James, Ryan J. Meckfessel, Esq., Squire Sanders & Dempsey, LLP, San Francisco, CA, for Defendants–Appellees.

Before: TALLMAN, BYBEE, and BEA, Circuit Judges.

---

**3.** *United States v. Booker*, — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

MEMORANDUM *

Appellant ECM, Inc. ("ECM") appeals the entry of summary judgment in favor of Appellee Placer Dome U.S. ("PDUS"). The district court ruled that the disclosure provision of the lease agreement between ECM and PDUS's predecessor-in-interest did not run with the land and therefore did not bind PDUS.

We review a district court's grant of summary judgment *de novo*. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir.2004). Three elements define a covenant that runs with the land: 1) the original parties to the covenant must intend for the covenant to run; 2) the covenant must touch and concern the land; and 3) there must be privity of estate. *Wheeler v. Schad*, 7 Nev. 204, 208–09 (1871).

For reasons explained by the district court, we conclude that the disclosure provision did not touch and concern the land. The covenant therefore does not run with the land, and PDUS is not bound by it.

AFFIRMED.

BEA, Circuit Judge, dissenting.

I respectfully dissent.

The facts of this case are relatively straightforward. ECM, Inc. ("ECM") staked the Gold Acres South ("GAS") claim in Nevada. Placer Dome U.S. Inc. ("PDUS") staked claims to the northwest of the GAS claim. ECM leased the GAS claim to Royal Gold, Inc. ("Royal Gold") pursuant to the ECM Lease. Section 19(b) of the ECM Lease stated:

Lessee [Royal Gold] shall furnish lessor [ECM], upon request by Lessor and at termination of this Lease, any reports and data regarding the leased Property gathered or prepared by Lessee or its agents including, but not limited to, reports and data concerning mineral occurrence and economics of mine development or operations.

Royal Gold later entered into a joint venture with PDUS to explore the GAS claim, and PDUS assumed primary responsibility for exploring the GAS claim. PDUS acquired soil samples from the GAS claim; ECM was also given those soil samples. PDUS analyzed the samples, which suggested a gold discovery on the GAS claim. PDUS also acquired data from a drill hole on its own claim which suggested a gold discovery running below ground from PDUS's claim into the GAS claim. PDUS prepared reports regarding the gold discovery on the GAS claim, but did not provide any of those reports to ECM. PDUS then sought to restructure the lease of the GAS claim. ECM, not knowing of the gold discovery, agreed to a new lease which diluted its interest in the GAS claim. PDUS later struck gold on the GAS claim, and ECM cried foul.

The issue, then, is whether section 19(b) of the ECM Lease required PDUS to disclose to ECM the reports and data regarding the gold find on the GAS claim. Because PDUS is a successor-in-interest to the original covenantor of the ECM Lease (*i.e.*, Royal Gold), PDUS is bound to any covenants in the ECM Lease only if the covenant ran with the leasehold. *See Wheeler v. Schad*, 7 Nev. 204, 208—09 (1871). The district court assumed that (1) the original parties intended the covenant to run; and (2) that there was privity of estate. The district court found the final element was lacking, *i.e.*, that section 19(b) did not "touch and concern" the land.

I agree with the district court that because the covenantee (ECM) is suing the

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

covenantor's assignee (the covenantor was Royal Gold, and its assignee is PDUS), the proper consideration here is whether the "burden" of section 19(b) touches and concerns the leasehold. *See* 1 Herbert T. Tiffany & Basil Jones, *Tiffany Real Property* § 126 (2004) ("While the textwriters differ, reason and authority, as presented in Professor Clark's discussion of the question, tend strongly to support his conclusion that benefit and burden are capable of running separately, and therefore the covenantee's assignee may sue the covenantor when the benefit runs, *and the covenantee may sue the covenantor's assignee when the burden runs,* but the covenantee's assignee may sue the covenantor's assignee only when benefit and burden both run." (emphasis added)). I also agree with the district court that, in determining whether section 19(b) touched and concerned the leasehold, Nevada courts would likely use Professor Charles E. Clark's rule: the "burden" of a covenant "touches and concerns" the leasehold "[i]f the promisor's legal relations in respect to the land in question are lessened"; that is, if "his legal interest as owner [is] rendered less valuable by the promise." William B. Stoebuck & Dale A. Whitman, *The Law of Property* § 8.15, at 479 (3d ed.2000) (quoting Charles E. Clark, *Real Covenants and Other Interests which "Run with Land"* 97 (2d ed.1947)); *see Reno v. Matley,* 79 Nev. 49, 378 P.2d 256, 260 (1963) (discussing with approval the Clark "touch and concern" rule).

It is here where I part company from the district court and the majority. Section 19(b) stated in part: "Lessee shall furnish lessor, upon request by Lessor and at termination of this Lease, any reports and data regarding the leased Property gathered or prepared by Lessee or its agents ...." Such reports and data included, but were not limited to, "reports and data concerning mineral occurrence

and economics of mine development or operations."

ECM either requested the reports and data at issue from PDUS, or the ECM Lease terminated without PDUS providing any of the reports and data. Further, the terms of section 19(b) would encompass reports of a gold discovery upon the GAS claim. The broad term "regarding" would include reports and data "with respect to," "concerning," "relating to," or "about" the GAS claim. *See* Webster's Third New Int'l Dictionary 470, 1911 (1965). Surely, that would include reports and data of a gold discovery upon the GAS claim; data of a gold discovery on the GAS claim would be "about" the GAS claim.

The question, then, "is whether section 19(b) touches and concerns the land, *i.e.,* whether the promisor's legal relations in respect to the land in question are lessened"; that is, if "his legal interest as owner [is] rendered less valuable by the promise." Stoebuck, *supra,* § 8.15, at 479. PDUS had a legal interest in the GAS claim through the lease; ECM also had a legal interest in the GAS claim as owner. When PDUS acquired information of a gold discovery on the GAS claim, unbeknownst to ECM, the value of PDUS's legal interest in the GAS claim increased; it then possessed a valuable informational advantage over ECM. If PDUS had divulged information of that gold discovery to ECM, PDUS's informational advantage would have dissipated, and with it, PDUS's legal interest in the GAS claim would have been rendered less valuable by adhering to the promise in section 19(b). Because disclosure of the reports and data regarding the gold discovery on the GAS claim would have lessened PDUS's legal interest in the GAS claim, the disclosure provision "touched and concerned" the land.

Information has value; indeed, in business, information *is* gold.[1] After PDUS discovered gold on the GAS claim unbeknownst to ECM, PDUS negotiated a restructuring of the lease of the GAS claim. ECM agreed to a new lease and a dilution of its interest in the mining output from the GAS claim. Surely, ECM would not have so agreed had they known of the gold discovery on the GAS claim.

PDUS claimed during oral argument, however, that section 19(b) only encompasses reports and data derived exclusively from sources on the GAS claim, rather than sources off of the GAS claim (such as PDUS's drill holes on its own neighboring claim). Section 19(b) makes no such distinction. It is inclusive of any reports and data, as long as those reports and data are "regarding" the GAS claim. Data which corroborates, ratifies, or concerns the presence of minerals on the GAS claim is data "regarding" the GAS claim. As noted above, disclosure of such data would have lessened the value of PDUS's legal interest in the GAS claim, and thus the disclosure covenant in section 19(b) "touched and concerned" the land.

In my view, the district court erred in finding section 19(b) did not touch and concern the GAS claim. I would thus remand to the district court for it to consider whether the other two elements it assumed—*i.e.*, whether the original parties intended for the covenant to run, and whether there was privity of estate—are met here. Because the majority's opinion differs, I respectfully dissent.

---

1. No one can forget that Rothschild agents used semaphores and lamps to signal the result of Waterloo across the English Channel in time for Rothschild to buy heavily British public debt ("gilts"), the value of which rose dramatically when the market belatedly got the news of the British victory.